**EBAY, INC., Plaintiff,**

v.

**BIDDER'S EDGE, INC., Defendant.**

**No. C–99–21200RMW.**

United States District Court,
N.D. California.

May 24, 2000.

---

Janet L. Cullum, Mark B. Pitchford, Charles A. Schwab, Cooley Godward LLP, Palo Alto, CA, for plaintiff.

David J. Byer, John J. Cotter, Sara Hinchey, Marc E. Betinsky, Sean C. Ploen, Testa Hurwitz & Thibeault LLP, Boston, MA, Timothy C. Hale, Russo & Hale, Palo Alto, CA, for defendant.

## ORDER GRANTING PRELIMINARY INJUNCTION

WHYTE, District Judge.

Plaintiff eBay, Inc.'s ("eBay") motion for preliminary injunction was heard by the court on April 14, 2000. The court has read the moving and responding papers [1] and heard the argument of counsel. For the reasons set forth below, the court preliminarily enjoins defendant Bidder's Edge, Inc. ("BE") from accessing eBay's computer systems by use of any automated querying program without eBay's written authorization.

## I. BACKGROUND

eBay is an Internet-based, person-to-person trading site. (Jordan Decl. ¶ 3.) eBay offers sellers the ability to list items for sale and prospective buyers the ability to search those listings and bid on items. (*Id.*) The seller can set the terms and conditions of the auction. (*Id.*) The item is sold ·to the highest bidder. (*Id.*) The transaction is consummated directly between the buyer and seller without eBay's involvement. (*Id.*) A potential purchaser looking for a particular item can access the eBay site and perform a key word search for relevant auctions and bidding status. (*Id.*) eBay has also created category listings that identify items in over 2500 categories, such as antiques, computers, and dolls. (*Id.*) Users may browse these category listing pages to identify items of interest. (*Id.*)

Users of the eBay site must register and agree to the eBay User Agreement. (*Id.* ¶ 4.) Users agree to the seven page User Agreement by clicking on an "I Accept" button located at the end of the User Agreement. (*Id.* Ex. D.) The current version of the User Agreement prohibits the use of "any robot, spider, other automatic device, or manual process to monitor or copy our web pages or the content contained herein without our prior expressed written permission." (*Id.*) It is not clear that the version of the User Agreement in effect at the time BE began searching the eBay site prohibited such activity, or that BE ever agreed to comply with the User Agreement.

eBay currently has over 7 million registered users. (Jordan Decl. ¶ 4.) Over 400,000 new items are added to the site every day. (*Id.*) Every minute, 600 bids are placed on almost 3 million items. (*Id.*) Users currently perform, on average, 10 million searches per day on eBay's database. Bidding for and sales of items are continuously ongoing in millions of separate auctions. (*Id.*)

A software robot is a computer program which operates across the Internet to perform searching, copying and retrieving functions on the web sites of others.[2] (Maynor Decl. ¶ 3; Johnson–Laird Decl. ¶ 15.) A software robot is capable of exe-

---

1. On April 21, 2000, defendant Bidder's Edge, Inc. filed an *ex parte* motion for leave to file a supplemental declaration in order to respond to factual assertions in the reply. Although the court suspects that with reasonable diligence BE could have prepared the declaration at least by the hearing date, the declaration consists merely of the results of four searches performed on major Internet search engines. eBay's opposition did not cite any prejudice that would result from its filing. Accordingly, BE's motion is granted.

2. Programs that recursively query other computers over the Internet in order to obtain a significant amount of information are referred to in the pleadings by various names, including software robots, robots, spiders and web crawlers.

cuting thousands of instructions per minute, far in excess of what a human can accomplish. (Maynor Decl. ¶ 3) Robots consume the processing and storage resources of a system, making that portion of the system's capacity unavailable to the system owner or other users. (*Id.*) Consumption of sufficient system resources will slow the processing of the overall system and can overload the system such that it will malfunction or "crash." (*Id.*) A severe malfunction can cause a loss of data and an interruption in services. (*Id.*)

The eBay site employs "robot exclusion headers." (*Id.* ¶ 5.) A robot exclusion header is a message, sent to computers programmed to detect and respond to such headers, that eBay does not permit unauthorized robotic activity. (*Id.*) Programmers who wish to comply with the Robot Exclusion Standard design their robots to read a particular data file, "robots.txt," and to comply with the control directives it contains. (Johnson–Laird Decl. ¶ 20.)

To enable computers to communicate with each other over the Internet, each is assigned a unique Internet Protocol ("IP") address. (Maynor Decl. ¶ 6.) When a computer requests information from another computer over the Internet, the requesting computer must offer its IP address to the responding computer in order to allow a response to be sent. (*Id.*) These IP addresses allow the identification of the source of incoming requests. (*Id.*) eBay identifies robotic activity on its site by monitoring the number of incoming requests from each particular IP address. (*Id.* ¶ 7.) Once eBay identifies an IP address believed to be involved in robotic activity, an investigation into the identity, origin and owner of the IP address may be made in order to determine if the activity is legitimate or authorized. (*Id.* ¶ 8.) If an investigation reveals unauthorized robotic activity, eBay may attempt to ignore ("block") any further requests from that IP address. (*Id.*) Attempts to block requests from particular IP addresses are

not always successful. (*Id.* ¶ 9; Johnson–Laird Decl. ¶ 27.)

Organizations often install "proxy server" software on their computers. (Johnson–Laird Decl. ¶ 12.) Proxy server software acts as a focal point for outgoing Internet requests. (*Id.*) Proxy servers conserve system resources by directing all outgoing and incoming data traffic through a centralized portal. (*Id.*) Typically, organizations limit the use of their proxy servers to local users. (*Id.*) However, some organizations, either as a public service or because of a failure properly to protect their proxy server through the use of a "firewall," allow their proxy servers to be accessed by remote users. (*Id.* ¶ 13.) Outgoing requests from remote users can be routed through such unprotected proxy servers and appear to originate from the proxy server. (*Id.*) Incoming responses are then received by the proxy server and routed to the remote user. (*Id.*) Information requests sent through such proxy servers cannot easily be traced back to the originating IP address and can be used to circumvent attempts to block queries from the originating IP address. (*Id.* ¶ 14.) Blocking queries from innocent third party proxy servers is both inefficient, because it creates an endless game of hide-and-seek, and potentially counterproductive, as it runs a substantial risk of blocking requests from legitimate, desirable users who use that proxy server. (*Id.* ¶ 22.)

BE is a company with 22 employees that was founded in 1997. (Carney Decl. ¶ 2.) The BE web site debuted in November 1998. (*Id.* ¶ 3.) BE does not host auctions. (*Id.* ¶ 2.) BE is an auction aggregation site designed to offer on-line auction buyers the ability to search for items across numerous on-line auctions without having to search each host site individually. (*Id.*) As of March 2000, the BE web site contained information on more that five million items being auctioned on more than one hundred auction sites. (*Id.* ¶ 3.) BE also provides its users with additional auction-related services and information. (*Id.* ¶ 2.) The

information available on the BE site is contained in a database of information that BE compiles through access to various auction sites such as eBay. (*Id.* ¶ 4.) When a user enters a search for a particular item at BE, BE searches its database and generates a list of every item in the database responsive to the search, organized by auction closing date and time. (*Id.* ¶ 5.) Rather than going to each host auction site one at a time, a user who goes to BE may conduct a single search to obtain information about that item on every auction site tracked by BE. (*Id.* ¶ 6.) It is important to include information regarding eBay auctions on the BE site because eBay is by far the biggest consumer to consumer on-line auction site. (*Id.*)

On June 16, 1997, over a year before the BE web site debuted, Peter Leeds [3] wrote an email in response to an email from Kimbo Mundy, co-founder of BE. (Ritchey Decl. Ex 6.) Mundy's email said, "I think the magazines may be overrating sites' ability to block. The early agent experiments, like Arthur Anderson's *Bargain-Finder* were careful to check the robots.txt file on every site and desist if asked." (*Id.*) (underline in original). Mundy wrote back: "I believe well-behaved robots are still expected to check the robots.txt file.... Our other concern was also legal. It is one thing for customers to use a tool to check a site and quite another for a single commercial enterprise to do so on a repeated basis and then to distribute that information for profit." (*Id.*)

In early 1998, eBay gave BE permission to include information regarding eBay-hosted auctions for Beanie Babies and Furbies in the BE database. (*Id.* ¶ 7.) In early 1999, BE added to the number of person-to-person auction sites it covered and started covering a broader range of items hosted by those sites, including eBay. (*Id.* ¶ 8.) On April 24, 1999, eBay verbally approved BE crawling the eBay web site for a period of 90 days. (*Id.*) The parties contemplated that during this period they would reach a formal licensing agreement. (*Id.*) They were unable to do so.

It appears that the primary dispute was over the method BE uses to search the eBay database. eBay wanted BE to conduct a search of the eBay system only when the BE system was queried by a BE user. (Ploen Decl.Ex. 9.) This reduces the load on the eBay system and increases the accuracy of the BE data. (*Id.*) BE wanted to recursively crawl the eBay system to compile its own auction database. (Carney Decl. ¶ 18.) This increases the speed of BE searches and allows BE to track the auctions generally and automatically update its users when activity occurs in particular auctions, categories of auctions, or when new items are added. (*Id.*)

In late August or early September 1999, eBay requested by telephone that BE cease posting eBay auction listings on its site. (*Id.* ¶ 9; Rock Decl. ¶ 5.) BE agreed to do so. (Rock Decl. ¶ 5.) In October 1999, BE learned that other auction aggregations sites were including information regarding eBay auctions. (Carney Decl. ¶ 12.) On November 2, 1999, BE issued a press release indicating that it had resumed including eBay auction listings on its site. (Rock Decl.Ex. H.) On November 9, 1999, eBay sent BE a letter reasserting that BE's activities were unauthorized, insisting that BE cease accessing the eBay site, alleging that BE's activities constituted a civil trespass and offering to license BE's activities. (*Id.* Ex. I.) eBay and BE were again unable to agree on licensing terms. As a result, eBay attempted to block BE from accessing the eBay site; by the end of November, 1999, eBay had blocked a total of 169 IP addresses it believed BE was using to query eBay's system. (Maynor Decl. ¶ 12.) BE elected to continue crawling eBay's site by using

---

**3.** It is unclear who Peter Leeds is, except that his email address at the time was <pe-

ter@biddersedge.com>.

proxy servers to evade eBay's IP blocks. (Mundy Depo. at 271:18–19 ("We eventually adopted the rotating proxy servers."))

Approximately 69% of the auction items contained in the BE database are from auctions hosted on eBay. (Carney Decl. ¶ 17.) BE estimates that it would lose one-third of its users if it ceased to cover the eBay auctions. (*Id.*)

The parties agree that BE accessed the eBay site approximate 100,000 times a day. (Felton Decl. ¶ 33.) eBay alleges that BE activity constituted up to 1.53% of the number of requests received by eBay, and up to 1.10% of the total data transferred by eBay during certain periods in October and November of 1999. (Johnson–Laird Decl. ¶ 64.) BE alleges that BE activity constituted no more than 1.11% of the requests received by eBay, and no more than 0.70% of the data transferred by eBay. (Felton Decl. ¶ 60.) eBay alleges that BE activity had fallen 27%, to 0.74% of requests and 0.61% of data, by February 20, 2000. (Johnson–Laird Decl. ¶¶ 70–71.) eBay alleges damages due to BE's activity totaling between $45,323 and $61,804 for a ten month period including seven months in 1999 and the first three months in 2000. (Meyer Decl. ¶ 28.) However, these calculations appear flawed in that they assume the maximal BE usage of eBay resources continued over all ten months. (*Id.*) Moreover, the calculations

attribute a pro rata share of eBay expenditures to BE activity, rather than attempting to calculate the incremental cost to eBay due to BE activity. (*Id.*) eBay has not alleged any specific incremental damages due to BE activity. (*See* Rock Depo., 192:8–10.) [4]

It appears that major Internet search engines, such as Yahoo!, Google, Excite and AltaVista, respect the Robot Exclusion Standard. (Johnson–Laird Decl. ¶¶ 81–85.) [5]

eBay now moves for preliminary injunctive relief preventing BE from accessing the eBay computer system based on nine causes of action: trespass, false advertising, federal and state trademark dilution, computer fraud and abuse, unfair competition, misappropriation, interference with prospective economic advantage and unjust enrichment. However, eBay does not move, either independently or alternatively, for injunctive relief that is limited to restricting how BE can use data taken from the eBay site. [6]

## II. LEGAL STANDARD

■ To obtain preliminary injunctive relief, a movant must demonstrate "either a likelihood of success on the merits and the possibility of irreparable injury, or that serious questions going to the merits were raised and the balance of hardships tips

---

4. Q: Are you aware of any complaints from eBay users about slowdowns that were caused by aggregators?

   A: No.

5. BE appears to argue that this cannot be the case because searches performed on each of these search engines will return results that include eBay web pages. (Supp. Ploen Decl. ¶¶ 1–9.) However, this does not establish that these sites do not respect robot exclusion headers. There are numerous ways in which search engines can obtain information in compliance with exclusion headers, including; obtaining consent, abiding by the robot.txt file guidelines, or manually searching the sites. BE did not present any evidence of any site ever complaining about the activities of any of these search engines.

6. The bulk of eBay's moving papers and declarations address the alleged misuse of the eBay mark and the information BE obtains from the eBay computers. The court does not address the facts specific to these claims, nor the merits of these claims. Even if eBay were able to establish a likelihood of success on the merits as to these causes of action, such a showing would only support injunctive relief addressing BE's use of the eBay mark and BE's use of the eBay auction listings (the appropriate relief for which would appear to be a disclaimer regarding the lack of affiliation between eBay and BE and explicitly alerting customers to the limited scope of BE's information). Such a showing would not be sufficient to enjoin BE from accessing eBay's computer systems, which is the only relief eBay appears to request.

sharply in its favor." *Sega Enterprises Ltd. v. Accolade, Inc.*, 977 F.2d 1510, 1517 (9th Cir.1992) (citations omitted). The alternatives in the above standard represent "extremes of a single continuum," rather than two separate tests. *Benda v. Grand Lodge of Int'l Ass'n of Machinists & Aerospace Workers*, 584 F.2d 308, 315 (9th Cir. 1978). "The critical element in determining the test to be applied is the relative hardship to the parties. If the balance of harm tips decidedly toward the plaintiff, then the plaintiff need not show as robust a likelihood of success on the merits as when the balance tips less decidedly." *Alaska v. Native Village of Venetie*, 856 F.2d 1384, 1389 (9th Cir.1988). A "serious question" is one on which the movant has a "fair chance of success on the merits." *Sierra On–Line, Inc. v. Phoenix Software, Inc.*, 739 F.2d 1415, 1421 (9th Cir.1984). Generally, the "balance of harm" evaluation should precede the "likelihood of success analysis" because until the balance of harm has been evaluated the court cannot know how strong and substantial the plaintiff's showing of the likelihood of success must be. *See Village of Venetie*, 856 F.2d at 1389.

## III. ANALYSIS

### A. Balance of Harm

eBay asserts that it will suffer four types of irreparable harm if preliminary injunctive relief is not granted: (1) lost capacity of its computer systems resulting from to BE's use of automated agents; (2) damage to eBay's reputation and goodwill caused by BE's misleading postings; (3) dilution of the eBay mark; and (4) BE's unjust enrichment.[7] (Mot. at 23:18–25.) The harm eBay alleges it will suffer can be

divided into two categories. The first type of harm is harm that eBay alleges it will suffer as a result of BE's automated query programs burdening eBay's computer system ("system harm"). The second type of harm is harm that eBay alleges it will suffer as a result of BE's misrepresentations regarding the information that BE obtains through the use of these automated query programs ("reputational harm").

As noted above, eBay does not seek an injunction that is tailored to independently address the manner in which BE uses the information it obtains from eBay.[8] Even without accessing eBay's computer systems by robot, BE could inflict reputational harm by misrepresenting the contents of eBay's auction database or by misusing eBay's trademark. Moreover, allowing frequent and complete recursive searching of eBay's database (which would presumably exacerbate the system harm), requiring appropriate disclaimers regarding the accuracy of BE's listings, or limiting BE's use of the eBay mark would all reduce or eliminate the possibility of reputational harm, without requiring the drastic remedy of enjoining BE from accessing eBay's database.[9] Since eBay does not move independently or alternatively for injunctive relief tailored toward the alleged reputational harm, the court does not include the alleged reputational harm in the balance of harm analysis, nor does the court address the merits of the causes of action based on the alleged reputational harm in the likelihood of success analysis.

■ According to eBay, the load on its servers resulting from BE's web crawlers represents between 1.11% and 1.53% of the total load on eBay's listing servers. eBay alleges both economic loss from BE's current activities and potential harm re-

---

**7.** eBay does not appear to offer any support for the proposition that unjust enrichment is an independent cause of action, let alone an independently adequate basis for preliminary injunctive relief.

**8.** Although, as a practical matter, enjoining BE from accessing eBay's computers or searching eBay's auction database may result

in BE's inability to make effective use of information from eBay's auction site.

**9.** Thus, eBay's motion appears to be, in part, a tactical effort to increase the strength of its license negotiating position and not just a genuine effort to prevent irreparable harm.

sulting from the total crawling of BE and others. In alleging economic harm, eBay's argument is that eBay has expended considerable time, effort and money to create its computer system, and that BE should have to pay for the portion of eBay's system BE uses. eBay attributes a pro rata portion of the costs of maintaining its entire system to the BE activity. However, eBay does not indicate that these expenses are incrementally incurred because of BE's activities, nor that any particular service disruption can be attributed to BE's activities.[10] eBay provides no support for the proposition that the pro rata costs of obtaining an item represent the appropriate measure of damages for unauthorized use. In contrast, California law appears settled that the appropriate measure of damages is the actual harm inflicted by the conduct:

> Where the conduct complained of does not amount to a substantial interference with possession or the right thereto, but consists of intermeddling with or use of or damages to the personal property, the owner has a cause of action for trespass or case, and may recover only the actual damages suffered by reason of the impairment of the property or the loss of its use.

*Zaslow v. Kroenert,* 29 Cal.2d 541, 551, 176 P.2d 1 (1946). Moreover, even if BE is inflicting incremental maintenance costs on eBay, potentially calculable monetary damages are not generally a proper foundation for a preliminary injunction. *See e.g., Sampson v. Murray,* 415 U.S. 61, 90, 94 S.Ct. 937, 39 L.Ed.2d 166 (1974). Nor does eBay appear to have made the required showing that this is the type of extraordinary case in which monetary damages may support equitable relief. *See In re Estate of Ferdinand Marcos, Human Rights Litigation,* 25 F.3d 1467, 1480 (9th Cir.1994) ("a district court has authority to issue a preliminary injunction where the plaintiffs can establish that money damages will be an inadequate remedy due to impending insolvency of the defendant or that defendant has engaged in a pattern of secreting or dissipating assets to avoid judgment.").

eBay's allegations of harm are based, in part, on the argument that BE's activities should be thought of as equivalent to sending in an army of 100,000 robots a day to check the prices in a competitor's store. This analogy, while graphic, appears inappropriate. Although an admittedly formalistic distinction, unauthorized robot intruders into a "brick and mortar"[11] store would be committing a trespass to real property. There does not appear to be any doubt that the appropriate remedy for an ongoing trespass to business premises would be a preliminary injunction. *See e.g., State v. Carriker,* 5 Ohio App.2d 255, 214 N.E.2d 809, 811–12 (1964) (interpreting Ohio criminal trespass law to cover a business invitee who, with no intention of

---

**10.** This case was filed on December 10, 1999. BE decommissioned a number of its servers in mid-December 1999. (*See* Mundy Depo. at 75:12–14.) Reformatting the hard drives resulted in the destruction of the server logs that may have indicated the actual duration of access to eBay's system. (*See id.* at 74:17–24.) eBay argues this should support an adverse inference against BE because eBay is unable to correlate BE's access to eBay's system with service disruptions. BE responds that these actions were a result of hardware failures unrelated to the litigation. The court agrees that these actions may support an inference that the information BE destroyed was prejudicial. However, final resolution of the fact-dependent questions regarding the circumstances under which this information was destroyed requires a more complete record. Accordingly, eBay is not entitled to a conclusive presumption of harm at this juncture in the proceedings, and eBay's motion to strike all evidence submitted by BE relating to a lack of harm is denied.

**11.** The phrase "brick and mortar" is often used to designate a traditional business when contrasting it with a predominantly, or entirely, on-line business. The phrase appears to refer to the historical reliance on conducting commerce within the context of a physical space made from materials such as brick and mortar, as opposed to the modern trend toward conducting commerce in a cyberspace made from computer programs.

making a purchase, uses the business premises of another for his own gain after his invitation has been revoked); *General Petroleum Corp. v. Beilby,* 213 Cal. 601, 605, 2 P.2d 797 (1931). More importantly, for the analogy to be accurate, the robots would have to make up less than two out of every one-hundred customers in the store, the robots would not interfere with the customers' shopping experience, nor would the robots even be seen by the customers. Under such circumstances, there is a legitimate claim that the robots would not pose any threat of irreparable harm. However, eBay's right to injunctive relief is also based upon a much stronger argument.

■ If BE's activity is allowed to continue unchecked, it would encourage other auction aggregators to engage in similar recursive searching of the eBay system such that eBay would suffer irreparable harm from reduced system performance, system unavailability, or data losses. (*See* Spafford Decl. ¶ 32;[12] Parker Decl. ¶ 19;[13] Johnson–Laird Decl. ¶ 85.[14]) BE does not appear to seriously contest that reduced system performance, system unavailability or data loss would inflict irreparable harm on eBay consisting of lost profits and lost customer goodwill. Harm resulting from lost profits and lost customer goodwill is irreparable because it is neither easily calculable, nor easily compensable and is therefore an appropriate basis for injunctive relief. *See, e.g., People of California ex rel. Van De Kamp v. Tahoe Reg'l Planning Agency,* 766 F.2d 1316, 1319 (9th Cir.1985). Where, as here, the denial of

preliminary injunctive relief would encourage an increase in the complained of activity, and such an increase would present a strong likelihood of irreparable harm, the plaintiff has at least established a possibility of irreparable harm.[15]

In the patent infringement context, the Federal Circuit has held that a preliminary injunction may be based, at least in part, on the harm that would occur if a preliminary injunction were denied and infringers were thereby encouraged to infringe a patent during the course of the litigation. *See Atlas Powder Co. v. Ireco Chemicals,* 773 F.2d 1230, 1233 (Fed.Cir. 1985). In the absence of preliminary injunctive relief, "infringers could become compulsory licensees for as long as the litigation lasts." *Id.* The Federal Circuit's reasoning is persuasive. "The very nature of the patent right is the right to exclude others.... We hold that where validity and continuing infringement have been clearly established, as in this case, immediate irreparable harm is presumed. To hold otherwise would be contrary to the public policy underlying the patent laws." *Smith Int'l, Inc. v. Hughes Tool Co.,* 718 F.2d 1573, 1581 (Fed.Cir.1983) (footnotes omitted). Similarly fundamental to the concept of ownership of personal property is the right to exclude others. *See Kaiser Aetna v. United States,* 444 U.S. 164, 176, 100 S.Ct. 383, 62 L.Ed.2d 332 (1979) (characterizing "the right to exclude others" as "one of the most essential sticks in the bundle of rights that are commonly charac-

12. "If 30 or 40 companies spring into existence using similar business models, what will be the total load and impact on eBay's servers?"

13. "One crawler may currently use 1% of eBay's resources. What if hundred of users used similar crawlers?"

14. "Given that Bidder's Edge can be seen to have imposed a load of 1.53% on eBay's listing servers, simple arithmetic and economics reveal how only a few more such companies deploying rude robots [that do not respect the Robot Exclusion Standard] would be required

before eBay would be brought to its knees by what would be then a debilitating load."

15. *As discussed below, eBay has a established a strong likelihood of success on the merits of the trespass claim, and is therefore entitled to preliminary injunctive relief because it has established the possibility of irreparable harm. Accordingly, the court does not reach the issue of whether the threat of increased activity would be sufficient to support preliminary injunctive relief where the plaintiff has not made as strong of a showing of likelihood of success on the merits.*

terized as property"). If preliminary injunctive relief against an ongoing trespass to chattels were unavailable, a trespasser could take a compulsory license to use another's personal property for as long as the trespasser could perpetuate the litigation.

BE correctly observes that there is a dearth of authority supporting a preliminary injunction based on an ongoing to trespass to chattels. In contrast, it is black letter law in California that an injunction is an appropriate remedy for a continuing trespass to real property. *See Allred v. Harris,* 14 Cal.App.4th 1386, 1390, 18 Cal.Rptr.2d 530 (1993) (citing 5 B.E. Witkin, *Summary of California Law,* Torts § 605 (9th ed.1988)). If eBay were a brick and mortar auction house with limited seating capacity, eBay would appear to be entitled to reserve those seats for potential bidders, to refuse entrance to individuals (or robots) with no intention of bidding on any of the items, and to seek preliminary injunctive relief against non-customer trespassers eBay was physically unable to exclude. The analytic difficulty is that a wrongdoer can commit an ongoing trespass of a computer system that is more akin to the traditional notion of a trespass to real property, than the traditional notion of a trespass to chattels, because even though it is ongoing, it will probably never amount to a conversion.[16] The court concludes that under the circumstances present here, BE's ongoing violation of eBay's fundamental property right to exclude others from its computer system potentially causes sufficient irreparable harm to support a preliminary injunction.

■ BE argues that even if eBay is entitled to a presumption of irreparable harm, the presumption may be rebutted. The presumption may be rebutted by evidence that a party has engaged in a pattern of granting licenses to engage in the complained of activity such that it may be reasonable to expect that invasion of the right can be recompensed with a royalty rather than with an injunction, or by evidence that a party has unduly delayed in bringing suit, thereby negating the idea of irreparability. *See Polymer Technologies, Inc. v. Bridwell,* 103 F.3d 970, 974 (Fed. Cir.1996) (discussing presumption of irreparable harm in patent infringement context). BE alleges that eBay has both engaged in a pattern of licensing aggregators to crawl its site as well as delayed in seeking relief. For the reasons set forth below, the court finds that neither eBay's limited licensing activities nor its delay in seeking injunctive relief while it attempted to resolve the matter without judicial intervention are sufficient to rebut the possibility of irreparable harm.

If eBay's irreparable harm claim were premised solely on the potential harm caused by BE's current crawling activities, evidence that eBay had licensed others to crawl the eBay site would suggest that BE's activity would not result in irreparable harm to eBay. However, the gravamen of the alleged irreparable harm is that if BE is allowed to continue to crawl the eBay site, it may encourage frequent and unregulated crawling to the point that eBay's system will be irreparably harmed. There is no evidence that eBay has indiscriminately licensed all comers. Rather, it appears that eBay has carefully chosen to permit crawling by a limited number of aggregation sites that agree to abide by the terms of eBay's licensing agreement. "The existence of such a [limited] license, unlike a general license offered to all comers, does not demonstrate a decision to relinquish all control over the distribution of the prod-

---

16. As other courts have noted, applying traditional legal principles to the Internet can be troublesome. *See ImOn, Inc. v. ImaginOn, Inc.,* 90 F.Supp.2d 345, 346 (S.D.N.Y.2000) ("Both parties are suppliers of 'services or products' on the Internet which, as I recog- nize and grapple with hereafter, is one of the most fluid, rapidly developing, and virtually daily changing areas of commerce that the law has had to focus upon and endeavor to apply established principles to.")

uct in exchange for a readily computable fee." *Ty, Inc. v. GMA Accessories, Inc.,* 132 F.3d 1167, 1173 (7th Cir.1997) (discussing presumption of irreparable harm in copyright infringement context). eBay's licensing activities appear directed toward limiting the amount and nature of crawling activity on the eBay site. Such licensing does not support the inference that carte blanche crawling of the eBay site would pose no threat of irreparable harm.

eBay first learned of BE in late 1997 or early 1998 when BE sought to retain the same public relations firm used by eBay. (*See* Ploen Decl.Ex. 1.) This motion was filed on January 18, 2000. An unexplained delay of two years would certainly raise serious doubts as the irreparability of any alleged harm. *See Playboy Enters., Inc. v. Netscape Communications Corp.,* 55 F.Supp.2d 1070, 1090 (C.D.Cal.1999) (noting that delay of as little as 60 days to three months has been held sufficient to rebut the presumption of irreparable harm). Here, the circumstances establish that any delay resulted from eBay's good faith efforts to resolve this dispute without judicial intervention and do not rebut a finding of the possibility of irreparable harm.

In April 1999, eBay agreed to allow BE to crawl the eBay site for 90 days while the parties negotiated a license. In late August or early September 1999, after the parties had failed to negotiate a license, eBay requested that BE stop crawling the eBay site, and BE complied. It was not until November 2, 1999, that BE issued a press release indicating that it had resumed including eBay auction listings on its site. In response, on November 9, 1999, eBay sent BE a letter again informing BE that its activities were unauthorized and again offering to license BE's activities.[17] After eBay and BE were again unable to agree on licensing terms, eBay attempted to block BE from access-

ing the eBay site. By the end of November 1999, despite blocking more than 150 IP addresses, it became apparent that eBay was unable to prevent BE's crawling of the eBay system via rotating proxy servers. Having failed in its attempt at self-help, eBay filed this suit on December 10, 1999, and filed this motion five weeks later. The fact that eBay's primary concern is the threat from the likely increase in crawling activity that would result if BE is allowed to continue its unauthorized conduct, combined with eBay's repeated attempts to resolve this dispute without judicial intervention, and BE's continuing attempts to thwart eBay's protection of its property, convinces the court that eBay's delay in seeking preliminary relief was justified.

BE argues that even if eBay will be irreparably harmed if a preliminary injunction is not granted, BE will suffer greater irreparable harm if an injunction is granted. According to BE, lack of access to eBay's database will result in a two-thirds decrease in the items listed on BE, and a one-eighth reduction in the value of BE, from $80 million to $70 million. (Sweeny Decl. ¶¶ 42, 43.) Although the potential harm to BE does not appear insignificant, BE does not appear to have suffered any irreparable harm during the period it voluntarily ceased crawling the eBay site. Barring BE from automatically querying eBay's site does not prevent BE from maintaining an aggregation site including information from eBay's site. Any potential economic harm is appropriately addressed through the posting of an adequate bond.

██ Moreover, it appears that any harm alleged to result from being forced to cease an ongoing trespass may not be legally cognizable. In the copyright infringement context, once a plaintiff has established a strong likelihood of success on the merits, any harm to the defendant

---

**17.** Because BE was expressly notified that its conduct was unauthorized, it does not matter whether BE ever agreed to a version of the eBay User Agreement that prohibited robotic activity.

that results from the defendant being preliminarily enjoined from continuing to infringe is legally irrelevant. *See Triad Sys. Corp. v. Southeastern Exp. Co.,* 64 F.3d 1330, 1338 (9th Cir.1995) (defendant "cannot complain of the harm that will befall it when properly forced to desist from its infringing activities."). The Ninth Circuit has held it to be reversible error for a district court to even consider "the fact that an injunction would be devastating to [defendant's] business" once the plaintiff has made a strong showing of likely success on the merits of a copyright infringement claim. *Cadence Design Sys., Inc. v. Avant! Corp.,* 125 F.3d 824, 830 (9th Cir. 1997). The reasoning in these cases appears to be that a defendant who builds a business model based upon a clear violation of the property rights of the plaintiff cannot defeat a preliminary injunction by claiming the business will be harmed if the defendant is forced to respect those property rights. *See Concrete Mach. Co., Inc. v. Classic Lawn Ornaments, Inc.,* 843 F.2d 600, 613 (1st Cir.1988) ("If a strong likelihood of success is demonstrated, then the court should issue the injunction even if the defendant will incur the relatively greater burden; a probable infringer simply should not be allowed to continue to profit from its continuing illegality at the copyright owner's expense."). The Federal Circuit has crafted a similar rule with respect to patent infringement. *See Windsurfing Int'l Inc. v. AMF, Inc.,* 782 F.2d 995, 1003 n. 12 (Fed.Cir.1986) ("One who elects to build a business on a product found to infringe cannot be heard to complain if an injunction against continuing infringement destroys the business so elected."). Accordingly, the court concludes that eBay has demonstrated at least a possibility of suffering irreparable system harm and that BE has not established a balance of hardships weighing in its favor.

**B. Likelihood of Success**

As noted above, eBay moves for a preliminary injunction on all nine of its causes of action. These nine causes of action correspond to eight legal theories: (1) trespass to chattels, (2) false advertising under the Lanham Act, 15 U.S.C. § 1125(a), (3) federal and state trademark dilution, (4) violation of the Computer Fraud and Abuse Act, 18 U.S.C. § 1030, (5) unfair competition, (6) misappropriation, (7) interference with prospective economic advantage and (8) unjust enrichment. The court finds that eBay has established a sufficient likelihood of prevailing on the trespass claim to support the requested injunctive relief. Since the court finds eBay is entitled to the relief requested based on its trespass claim, the court does not address the merits of the remaining claims or BE's arguments that many of these other state law causes of action are preempted by federal copyright law. The court first addresses the merits of the trespass claim, then BE's arguments regarding copyright preemption of the trespass claim, and finally the public interest.

*1. Trespass*

■ Trespass to chattels "lies where an intentional interference with the possession of personal property has proximately cause injury." *Thrifty–Tel v. Bezenek,* 46 Cal.App.4th 1559, 1566, 54 Cal.Rptr.2d 468 (1996). Trespass to chattels "although seldom employed as a tort theory in California" was recently applied to cover the unauthorized use of long distance telephone lines. *Id.* Specifically, the court noted "the electronic signals generated by the [defendants'] activities were sufficiently tangible to support a trespass cause of action." *Id.* at n. 6. Thus, it appears likely that the electronic signals sent by BE to retrieve information from eBay's computer system are also sufficiently tangible to support a trespass cause of action.

■ In order to prevail on a claim for trespass based on accessing a computer system, the plaintiff must establish: (1) defendant intentionally and without autho-

rization interfered with plaintiff's possessory interest in the computer system; and (2) defendant's unauthorized use proximately resulted in damage to plaintiff. *See Thrifty–Tel,* 46 Cal.App.4th at 1566, 54 Cal.Rptr.2d 468; *see also Itano v. Colonial Yacht Anchorage,* 267 Cal.App.2d 84, 90, 72 Cal.Rptr. 823 (1968) ("When conduct complained of consists of intermeddling with personal property 'the owner has a cause of action for trespass or case, and may recover only the actual damages suffered by reason of the impairment of the property or the loss of its use.' ") (quoting *Zaslow v. Kroenert,* 29 Cal.2d 541, 550, 176 P.2d 1 (1946)). Here, eBay has presented evidence sufficient to establish a strong likelihood of proving both prongs and ultimately prevailing on the merits of its trespass claim.

*a. BE's Unauthorized Interference*

eBay argues that BE's use was unauthorized and intentional. eBay is correct. BE does not dispute that it employed an automated computer program to connect with and search eBay's electronic database. BE admits that, because other auction aggregators were including eBay's auctions in their listing, it continued to "crawl" eBay's web site even after eBay demanded BE terminate such activity.

BE argues that it cannot trespass eBay's web site because the site is publicly accessible. BE's argument is unconvincing. eBay's servers are private property, conditional access to which eBay grants the public. eBay does not generally permit the type of automated access made by BE. In fact, eBay explicitly notifies automated visitors that their access is not permitted. "In general, California does recognize a trespass claim where the defendant exceeds the scope of the consent." *Baugh v. CBS, Inc.,* 828 F.Supp. 745, 756 (N.D.Cal. 1993).

Even if BE's web crawlers were authorized to make individual queries of eBay's system, BE's web crawlers exceeded the scope of any such consent when they began acting like robots by making repeated queries. *See City of Amsterdam v. Daniel Goldreyer, Ltd.,* 882 F.Supp. 1273, 1281 (E.D.N.Y.1995) ("One who uses a chattel with the consent of another is subject to liability in trespass for any harm to the chattel which is caused by or occurs in the course of any use exceeding the consent, even though such use is not a conversion."). Moreover, eBay repeatedly and explicitly notified BE that its use of eBay's computer system was unauthorized. The entire reason BE directed its queries through proxy servers was to evade eBay's attempts to stop this unauthorized access. The court concludes that BE's activity is sufficiently outside of the scope of the use permitted by eBay that it is unauthorized for the purposes of establishing a trespass. *See Civic Western Corp. v. Zila Industries, Inc.,* 66 Cal.App.3d 1, 17, 135 Cal. Rptr. 915 (1977) ("It seems clear, however, that a trespass may occur if the party, entering pursuant to a limited consent, . . . proceeds to exceed those limits . . .") (discussing trespass to real property).

eBay argues that BE interfered with eBay's possessory interest in its computer system. Although eBay appears unlikely to be able to show a substantial interference at this time, such a showing is not required. Conduct that does not amount to a substantial interference with possession, but which consists of intermeddling with or use of another's personal property, is sufficient to establish a cause of action for trespass to chattel. *See Thrifty–Tel,* 46 Cal.App.4th at 1567, 54 Cal.Rptr.2d 468 (distinguishing the tort from conversion). Although the court admits some uncertainty as to the precise level of possessory interference required to constitute an intermeddling, there does not appear to be any dispute that eBay can show that BE's conduct amounts to use of eBay's computer systems. Accordingly, eBay has made a strong showing that it is likely to prevail on the merits of its assertion that BE's use of eBay's computer system was an unau-

thorized and intentional interference with eBay's possessory interest.

### b. Damage to eBay's Computer System

A trespasser is liable when the trespass diminishes the condition, quality or value of personal property. *See CompuServe, Inc. v. Cyber Promotions,* 962 F.Supp. 1015 (S.D.Ohio 1997). The quality or value of personal property may be "diminished even though it is not physically damaged by defendant's conduct." *Id.* at 1022. The Restatement offers the following explanation for the harm requirement:

> The interest of a possessor of a chattel in its inviolability, unlike the similar interest of a possessor of land, is not given legal protection by an action for nominal damages for harmless intermeddlings with the chattel. In order that an actor who interferes with another's chattel may be liable, his conduct must affect some other and more important interest of the possessor. Therefore, one who intentionally intermeddles with another's chattel is subject to liability only if his intermeddling is harmful to the possessor's materially valuable interest in the physical condition, quality, or value of the chattel, or if the possessor is deprived of the use of the chattel for a substantial time, or some other legally protected interest of the possessor is affected.... Sufficient legal protection of the possessor's interest in the mere inviolability of his chattel is afforded by his privilege to use reasonable force to protect his possession against even harmless interference.

Restatement (Second) of Torts § 218 cmt. e (1977).

eBay is likely to be able to demonstrate that BE's activities have diminished the quality or value of eBay's computer systems. BE's activities consume at least a portion of plaintiff's bandwidth and server capacity. Although there is some dispute as to the percentage of queries on eBay's site for which BE is responsible, BE admits that it sends some 80,000 to 100,000 requests to plaintiff's computer systems per day. (Ritchey Decl.Ex. 3 at 391:11–12.) Although eBay does not claim that this consumption has led to any physical damage to eBay's computer system, nor does eBay provide any evidence to support the claim that it may have lost revenues or customers based on this use,[18] eBay's claim is that BE's use is appropriating eBay's personal property by using valuable bandwidth and capacity, and necessarily compromising eBay's ability to use that capacity for its own purposes. *See CompuServe,* 962 F.Supp. at 1022 ("any value [plaintiff] realizes from its computer equipment is wholly derived from the extent to which that equipment can serve its subscriber base.").

BE argues that its searches represent a negligible load on plaintiff's computer systems, and do not rise to the level of impairment to the condition or value of eBay's computer system required to constitute a trespass. However, it is undisputed that eBay's server and its capacity are personal property, and that BE's searches use a portion of this property. Even if, as BE argues, its searches use only a small amount of eBay's computer system capacity, BE has nonetheless deprived eBay of the ability to use that portion of its personal property for its own purposes. The law recognizes no such right to use another's personal property. Accordingly, BE's actions appear to have caused injury to eBay and appear likely to continue to cause injury to eBay. If the court were to hold otherwise, it would likely encourage other auction aggregators to crawl the eBay site, potentially to the point of denying effective access to eBay's customers. If prelimi-

---

18. Plaintiff believes that it may have experienced system failures and a decrease in system performance during the times that defendant was searching its system, however, it is unable to produce any correlation between its outages and defendant's activities. Plaintiff contends that it would likely be able to produce such a correlation but for defendant's alleged destruction of logs that recorded the details of its robotic search activities.

nary injunctive relief were denied, and other aggregators began to crawl the eBay site, there appears to be little doubt that the load on eBay's computer system would qualify as a substantial impairment of condition or value. California law does not require eBay to wait for such a disaster before applying to this court for relief. The court concludes that eBay has made a strong showing that it is likely to prevail on the merits of its trespass claim, and that there is at least a possibility that it will suffer irreparable harm if preliminary injunctive relief is not granted. eBay is therefore entitled to preliminary injunctive relief.

### 2. Copyright Preemption

BE argues that the trespass claim, along with eBay's other state law causes of action, "is similar to eBay's originally filed but now dismissed copyright infringement claim, and each is based on eBay's assertion that Bidder's Edge copies eBay's auction listings, a right within federal copyright law." Opp'n at 8:10–12. BE is factually incorrect to the extent it argues that the trespass claim arises out of what BE does with the information it gathers by accessing eBay's computer system, rather than the mere fact that BE accesses and uses that system without authorization.

■■■■ A state law cause of action is preempted by the Copyright Act if, (1) the rights asserted under state law are "equivalent" to those protected by the Copyright Act, and (2) the work involved falls within the "subject matter" of the Copyright Act as set forth in 17 U.S.C. §§ 102 and 103. *Kodadek v. MTV Networks, Inc.*, 152 F.3d 1209, 1212 (9th Cir.1998). "In order not to be equivalent, the right under state law must have an extra element that changes the nature of the action so that it is qualitatively different from a copyright infringement claim." *Xerox Corp. v. Apple Computer, Inc.*, 734 F.Supp. 1542, 1550 (N.D.Cal.1990). Here, eBay asserts a right not to have BE use its computer

systems without authorization. The right to exclude others from using physical personal property is not equivalent to any rights protected by copyright and therefore constitutes an extra element that makes trespass qualitatively different from a copyright infringement claim. *But see Ticketmaster Corp. v. Tickets.Com, Inc.*, No. CV–99–7654, 2000 WL 525390 (C.D.Cal. Mar. 27, 2000) (dismissing trespass claim based on unauthorized Internet information aggregation as preempted by copyright law).

### 3. Public Interest

■■■ The traditional equitable criteria for determining whether an injunction should issue include whether the public interest favors granting the injunction. *American Motorcyclist Ass'n v. Watt*, 714 F.2d 962, 965 (9th Cir.1983). The parties submit a variety of declarations asserting that the Internet will cease to function if, according to eBay, personal and intellectual property rights are not respected, or, according to BE, if information published on the Internet cannot be universally accessed and used. Although the court suspects that the Internet will not only survive, but continue to grow and develop regardless of the outcome of this litigation, the court also recognizes that it is poorly suited to determine what balance between encouraging the exchange of information, and preserving economic incentives to create, will maximize the public good. Particularly on the limited record available at the preliminary injunction stage, the court is unable to determine whether the general public interest factors in favor of or against a preliminary injunction.

BE makes the more specific allegation that granting a preliminary injunction in favor of eBay will harm the public interest because eBay is alleged to have engaged in anticompetitive behavior in violation of federal antitrust law. The Ninth Circuit has noted that in evaluating whether to issue a preliminary injunction, the district court is under no obligation to consider the merits

of any antitrust counterclaims once the plaintiff has demonstrated a likelihood of success on the merits. *See Triad Sys. Corp. v. Southeastern Exp. Co.,* 64 F.3d 1330, 1336 n. 13 (9th Cir.1995) (discussing claim of copyright infringement). Although anticompetitive behavior may be appropriately considered in the context of a preliminary injunction based on trademark infringement, where misuse is an affirmative defense, *see Helene Curtis Indus. v. Church & Dwight Co.,* 560 F.2d 1325 (7th Cir.1977), it does not appear to be appropriately considered here, because there is no equivalent affirmative defense to trespass to chattels. Accordingly, the court concludes the public interest does not weigh against granting a preliminary injunction.

### IV. ORDER

Bidder's Edge, its officers, agents, servants, employees, attorneys and those in active concert or participation with them who receive actual notice of this order by personal service or otherwise, are hereby enjoined pending the trial of this matter, from using any automated query program, robot, web crawler or other similar device, without written authorization, to access eBay's computer systems or networks, for the purpose of copying any part of eBay's auction database. As a condition of the preliminary injunction, eBay is ordered to post a bond in the amount of $2,000,000 to secure payment of any damages sustained by defendant if it is later found to have been wrongfully enjoined. This order shall take effect 10 days from the date on which it is filed.

Nothing in this order precludes BE from utilizing information obtained from eBay's site other than by automated query program, robot, web crawler or similar device. The court denies eBay's request for a preliminary injunction barring access to its site based upon BE's alleged trademark infringement, trademark dilution and other claims. This denial is without prejudice to an application for an injunction limiting or conditioning the use of any information obtained on the theory that BE's use violates some protected right of eBay.