**WELENCO, INC., et al., Plaintiffs,**

v.

**Gary CORBELL, et al., Defendants.**

**No. 2:13–cv–0287 KJM CKD.**

United States District Court,
E.D. California.

Signed Aug. 25, 2015.

1156

Jarom Bryce Phipps, Thomas Allen Cregger, Cregger & Chalfant LLP, Sacramento, CA, for Plaintiffs.

Joseph Alan Werner, Richard G Zimmer, T. Mark Smith, Clifford & Brown, Bakersfield, CA, Matthew C. McCartney, Eastman & McCartney LLP, San Diego, CA, Noel Thomas McCartney, McCartney & Associates, Bakersfield, CA, for Defendants.

## ORDER

KIMBERLY J. MUELLER, District Judge.

Before the court are motions for summary judgment filed by defendants Gary W. Corbell, ECF No. 109, and Boredata, Inc. and Craig G. Corbell, ECF No. 110. Plaintiffs Water Well Technology, Inc. (Water Well) and Welenco, Inc. (Welenco) oppose both motions, and seek sealing of certain documents. ECF Nos. ·125, 126, 127. Defendants have replied. ECF Nos. 129, 132. The court held a hearing on this

matter on April 24, 2015. Jarom Phipps appeared for plaintiffs, Joseph Werner appeared for defendant Gary Corbell and Tom McCartney appeared for defendants Craig Corbell and Boredata, Inc. As set forth below, the court GRANTS IN PART and DENIES IN PART the pending motions.

## I. *PROCEDURAL BACKGROUND*

On February 14, 2013, plaintiffs Welenco and Water Well filed a complaint against defendants Mark Sharpless, Boredata, Gary W. Corbell and Craig G. Corbell, alleging various claims related to Craig Corbell's formation of the geo-logging company Boredata, allegedly formed while Craig Corbell was still employed by Welenco and using confidential Welenco business information. *See generally* Compl., ECF No. 2. On March 27, 2013, Craig Corbell and Boredata filed an answer and asserted a counterclaim. ECF No. 11.

Plaintiffs filed an amended complaint, the operative complaint, on July 24, 2013, naming as defendants Gary Corbell, Craig Corbell, Mark Sharpless and Boredata Incorporated. First Am. Compl. (FAC), ECF No. 23. Plaintiffs bring eleven claims: (1) violation of the Computer Fraud and Abuse Act of 1986 (CFAA), 18 U.S.C. § 1030; (2) computer trespass and violation of California's Comprehensive Computer Data Access and Fraud Act (CDAFA), California Penal Code § 502, against Craig Corbell; (3) copyright infringement; (4) use of a false designation of origin in violation of the Lanham Act, 15 U.S.C. § 1125(a)(1)(A); (5) false advertising in violation of the Lanham Act, 15 U.S.C. § 1125(a)(1)(B); (6) trespass to chattels against Craig Corbell; (7) violation of California Business and Professions Code § 17200; (8) misappropriation of trade secrets in violation of California Civil Code § 3426.1(b); (9) breach of written contract against Craig Corbell; (10) breach of written contract against Gary Corbell; and (11) declaratory relief against Gary Corbell. *Id.* On August 14, 2013, Gary Corbell filed a motion to dismiss, ECF No. 26, which Craig Corbell and Boredata joined on the same day, ECF No. 28. The court dismissed claims ten and eleven on September 26, 2013. ECF No. 35. Defendant Mark Sharpless and counterdefendant Welenco, Inc. were dismissed on November 14, 2014 upon the parties' stipulation. ECF No. 77.

On February 6, 2015, the magistrate judge granted defendants' motions to compel and ordered plaintiffs to produce responsive documents and complete interrogatories by February 13, 2015. ECF No. 99. Plaintiffs were cautioned that not complying with the order would result in the imposition of sanctions. *Id.* Plaintiffs nonetheless failed to comply, and on February 18, 2015, defendants Boredata and Craig Corbell moved for sanctions. ECF No. 100. Defendant Gary Corbell joined that motion. ECF No. 101. The magistrate judge held a hearing on the motion for sanctions on March 11, 2015. ECF No. 119. A day later, on March 12, 2015, the magistrate judge issued findings and recommendations, recommending the motion for sanctions be granted in part and imposing evidentiary sanctions on plaintiffs precluding them from introducing into evidence, either in opposition to summary judgment or at trial, any documents that were not produced by plaintiffs prior to February 14, 2015, and any testimony from witnesses John Duffield, Daniel Guardino, Tyler McMillan, or any person designated to testify on behalf of the corporate plaintiffs Welenco and Water Well. ECF No. 121.

On February 27, 2015, defendants filed separate motions for summary judgment. ECF Nos. 109, 110. On April 10, 2015, Water Well and Welenco filed oppositions to both motions for summary judgment.

ECF Nos. 125, 126. On April 17, 2015, Gary Corbell filed a reply and objection to declarations submitted with plaintiffs' opposition. ECF Nos. 129, 131. That same day, Craig Corbell and Boredata filed a reply and objections to evidence. ECF Nos. 132, 133.

On April 24, 2015, after summary judgment briefing was completed, the court adopted the magistrate judge's findings and recommendations on sanctions, granting the defense motion for sanctions in part, and directing the parties to file a joint statement regarding the status of documents, testimony, and declarations the court may consider in deciding summary judgment. ECF No. 138. The parties filed their joint statement on May 8, 2015, setting forth their differing positions regarding the effect of the evidentiary sanctions. ECF No. 139. The court addresses the evidentiary issues immediately below.

## II. EVIDENTIARY RECORD

### A. Objections

▮▮▮▮ In general, evidence presented with a motion for summary judgment must be admissible. See Fed.R.Civ.P. 56(e); *Fraser v. Goodale*, 342 F.3d 1032, 1036 (9th Cir.2003). At this stage, however, the court's consideration of evidence depends not on its form, but on its content. *Block v. City of Los Angeles*, 253 F.3d 410, 419 (9th Cir.2001). The party seeking admission of evidence "bears the burden of proof of admissibility." *Pfingston v. Ronan Eng'g Co.*, 284 F.3d 999, 1004 (9th Cir. 2002). If the opposing party objects to the proposed evidence, the party seeking admission must direct the district court to "authenticating documents, deposition testimony bearing on attribution, hearsay exceptions and exemptions, or other evidentiary principles under which the evidence in question could be deemed admissi-

ble...." *In re Oracle Corp. Sec. Litig.*, 627 F.3d 376, 385–86 (9th Cir.2010). Courts are generally "much more lenient" with the affidavits and documents of the party opposing summary judgment. *Scharf v. U.S. Atty. Gen.*, 597 F.2d 1240, 1243 (9th Cir.1979).

The court acknowledges and enforces the evidentiary sanctions recommended by the magistrate judge and adopted by this court. Those sanctions exclude documents that were not produced by plaintiffs prior to February 14, 2015, and any testimony from witnesses John Duffield, Daniel Guardino, Tyler McMillan, or any person designated to testify on behalf of the corporate plaintiffs Welenco and Water Well. ECF No. 121. In the parties' joint statement, defendants do not argue any documents submitted with the motions were not produced prior to February 2015 and are therefore are barred from consideration. ECF No. 139. Neither do defendants argue that any deposition or Robert Guardino's[1] declaration is inadmissible based on the sanctions. *Id.* Rather, defendants argue that Guardino's declaration is replete with statements that lack personal knowledge, see e.g. Guardino Decl. ¶¶ 4, 6, 7, 12, 13, 14, lack foundation, *id.* ¶¶ 2, 8, or are based on unauthenticated documents, *id.* ¶¶ 4, 6. Further, defendants argue several exhibits offered with the opposition to the motion lack the necessary foundation. Plaintiffs represent that the documents were produced in discovery prior to the February 14, 2015, the cutoff date set by the evidentiary sanctions, and were authenticated by counsel's declaration submitted with the opposition. Plaintiffs argue that at this stage, the court looks to whether the documents could be authenticated and admissible at trial through testimony by nonprecluded witnesses. They argue the evidentiary sanctions do not preclude

---

1. All references to Guardino from here on in this order are to Robert Guardino.

Robert Guardino's testimony, about the documents or based on his own personal knowledge, or consideration of documents subject to the business records exception of the hearsay rule.

### 1. Guardino Declaration

Defendant Gary Corbell objects to the declaration of Robert Guardino and documents attached to the declaration of Jarom Phipps in opposition to the motion, all of which were produced in the course of discovery. ECF No. 131. Defendants Craig Corbell and Boredata also object to Guardino's declaration and the same discovery documents. ECF No. 133.

Specifically, Craig Corbell and Boredata object to the majority of statements in Guardino's declaration as argumentative, lacking foundation, lacking personal knowledge, and say Guardino is not competent to testify on the matters his declaration addresses. ECF No. 133 at 2–5. To the extent Guardino's statements lack personal knowledge, and the court agrees that many do not, *see, e.g.*, Guardino Decl. ¶¶ 2, 3, 4, the court sustains the objections and does not rely on these statements in reaching its decision.

### 2. Document Containing Statement By McMillan

Gary Corbell also objects to a document attached to the opposition, WEL 0538–40, containing a statement by Tyler McMillan who refused to be deposed. Based on the evidentiary sanctions, Mr. McMillan's testimony may not be used as evidence. The document here, however, was produced prior to February 14, 2015, and may be considered.[2]

### 3. Documents Challenged as Not Property Authenticated

■ Defendants Craig Corbell and Boredata object to several other documents attached to the opposition as lacking authentication. Jarom Phipps, plaintiffs' counsel, authenticated the documents as documents produced in discovery. "Documents produced in response to discovery requests are admissible on a motion for summary judgment since they are self-authenticating and constitute the admissions of a party opponent." *Anand v. BP W. Coast Products LLC*, 484 F.Supp.2d 1086, 1092 (C.D.Cal.2007). Given the lack of any argument the documents are inauthentic, *Metro–Goldwyn–Mayer Studios, Inc. v. Grokster, Ltd.*, 454 F.Supp.2d 966, 972 (C.D.Cal.2006), and the leniency with which courts treat evidence offered by the nonmoving party in summary judgment, *Scharf*, 597 F.2d at 1243, the objection is overruled. *See Del Campo v. Am. Corrective Counseling Serv., Inc.*, 718 F.Supp.2d 1116, 1123 n. 10 (N.D.Cal. 2010) ("Since Defendants do not specify any reason to doubt the authenticity of documents that they themselves produced in discovery, the Court finds the documents properly authenticated under ·Fed. R.Evid. 901."); *Burch v. Regents of the University of California*, 433 F.Supp.2d 1110, 1118–24 (E.D.Cal.2006) (finding that "whether the authentication requirement should be applied to bar evidence when its authenticity is not actually disputed is, however, questionable"). Even absent authentication, authentication may be inferred, as it is here, from the contents of the documents. *See* Fed.R.Evid. 901(b)(4) (authenticity may be satisfied by the "[a]ppearance, contents, substance, internal

---

**2.** Plaintiffs filed their opposition to the motions for summary judgment as if the evidentiary sanctions had been adopted and were in place. Joint Statement at 9, ECF No. 139.

Defendants do not allege any document attached to the opposition was not produced, but object to their consideration on other grounds.

patterns, or other distinctive characteristics, taken in conjunction with circumstances"); *accord Las Vegas Sands v. Nehme,* 632 F.3d 526, 533 (9th Cir.2011); *see also Maljack Prods., Inc. v. Good-Times Home Video Corp.,* 81 F.3d 881, 889 n. 12 (9th Cir.1996) (district court did not err in considering unauthenticated documents submitted with summary judgment motion when the documents were produced, on company letterhead, and plaintiff did not contest authenticity).

#### 4. Other Evidence

The court has not considered any testimony not based on personal knowledge, or that is merely speculative. This includes several statements in Robert Guardino's declaration, including his speculation as to what the Corbells discussed, or their actions, knowledge or intentions, to which he is not a proper declarant. To the extent defendants object on hearsay grounds, the court sustains the objections to statements for which a declarant has no personal knowledge, *see* Fed.R.Evid. 602, or documents that do not reflect statements of a party-opponent, *id.* 801(d)(2), because that evidence would not be admissible at trial. *See* Fed.R.Civ.P. 56(e); *see also Orr v. Bank of America,* 285 F.3d 764, 773 (9th Cir.2002) (evidence must be admissible to be considered at summary judgment).

#### B. Motion to Seal

■ Plaintiffs request to seal several documents produced by parties in discovery, identified as CGC007244–CGC007255; CGC007256–CGC007279; WEL0479–80; WEL0538–40; WEL0546; WEL1118; WEL1421; WEL1426; WEL1428; WEL1960; and WEL2050–67. ECF No. 127. Documents originally produced by defendants during discovery are identified by the prefix "CGC"; documents originally produced by plaintiffs are identified by "WEL." *Id.* at 1. The documents covered by the sealing request relate to Tyler McMillan's review of Craig Corbell's work laptop, a customer list and related customer information, charts and information concerning Welenco's revenues, and the promissory note related to the formation of Boredata. The court has reviewed unredacted versions of the documents *in camera.*

On September 12, 2014, the magistrate judge assigned to this action entered a stipulation and protective order providing:

> No information designated Confidential or Highly Confidential, nor any documents disclosing, reproducing, or paraphrasing, in whole or part, Confidential or Highly Confidential Information may be filed or submitted to the Court unless the submission complies with the procedures set forth in Local Rule 141 for filing documents under seal.

ECF No. 66 ¶ 9.

Each document covered by the request to seal has been designated Confidential or Highly Confidential by the producing party. As a threshold matter, the parties are reminded of this court's standing order regarding sealing motions, which provides:

> Sealing and Protective Orders: No document will be sealed, nor shall a redacted document be filed, without the prior approval of the court. All requests to seal or redact shall be governed by Local Rules 141 (sealing) and 140 (redaction); protective orders covering the discovery phase of litigation shall not govern the filing of sealed or redacted documents on the public docket. The court will only consider requests to seal or redact filed by the proponent of sealing or redaction. If a party plans to make a filing that includes material an opposing party has identified as confidential and potentially subject to sealing, the filing party shall provide the opposing party with sufficient notice in advance of filing to allow for the seeking

of an order of sealing or redaction from the court.

Civil Standing Order (available on the court's web page); *see also* ECF No. 5–1 ¶ 10. Here, some of the documents plaintiffs seek to seal are related to defendants' financial records and job history. Thus, defendants are the proper proponents of sealing or redaction. *Id.* Plaintiffs had a duty to provide defendants with sufficient notice in advance of filing their opposition papers so defendants could elect to seek an order of sealing or redaction. *Id.* Instead, plaintiffs filed the instant request to seal. Nevertheless, considering the posture of the request and the status of the case, the court declines to strike the request to seal and addresses the merits of the request.

The Local Rules of the Eastern District of California provide that "[d]ocuments may be sealed only by written order of the Court." L.R. 141(a). A request to seal "shall set forth the statutory or other authority for sealing, the requested duration, the identity, by name or category, of persons to be permitted access to the documents, and all other relevant information." *Id.* 141(b).

■ There is a strong presumption in favor of public access to court records. *See Phillips v. Gen. Motors Corp.*, 307 F.3d 1206, 1210 (9th Cir.2002). However, "access to judicial records is not absolute." *Kamakana v. City & Cnty. of Honolulu*, 447 F.3d 1172, 1178 (9th Cir.2006). The Ninth Circuit has distinguished between the public's interest in accessing court records filed in connection with nondispositive and dispositive motions. *See Phillips*, 307 F.3d at 1206; *Foltz v. State Farm Mut. Auto. Ins. Co.*, 331 F.3d 1122 (9th Cir. 2003); *Kamakana*, 447 F.3d at 1172; *In re Midland Nat'l Life Ins. Co.*, 686 F.3d 1115, 1119 (9th Cir.2012).

■ To seal documents filed in connection with a dispositive motion such as summary judgment, parties must show there are "compelling reasons" for doing so. *Kamakana*, 447 F.3d at 1180, 1182 ("[T]he proponent of sealing bears the burden with respect to sealing."). To demonstrate compelling reasons, a party is "required to present articulable facts identifying the interests favoring continued secrecy and to show that these specific interests [overcome] the presumption of access by outweighing the public interest in understanding the judicial process." *Id.* at 1181 (internal citations, quotation marks, and emphasis omitted). "When sealing documents attached to a dispositive pleading, a district court must base its decision on a compelling reason and articulate the factual basis for its ruling, without relying on hypothesis or conjecture." *Id.* at 1182 (internal citation, quotation marks, and emphasis omitted); *see also Pintos v. Pac. Creditors Ass'n*, 605 F.3d 665, 679 (9th Cir.2010) (vacating and remanding district court's denial of sealing where court applied good cause standard to documents filed in connection with summary judgment motions). "In general, 'compelling reasons' sufficient to outweigh the public's interest in disclosure and justify sealing court records exist when such 'court files might become a vehicle for improper purposes,' such as the use of records to gratify private spite, promote public scandal, circulate libelous statements, or release trade secrets." *Kamakana*, 447 F.3d at 1179 (quoting *Nixon v. Warner Communs., Inc.*, 435 U.S. 589, 589, 98 S.Ct. 1306, 55 L.Ed.2d 570 (1978)). "The 'compelling reasons' standard is invoked even if the dispositive motion, or its attachments, were previously filed under seal or protective order." *Id.*

■ To the extent plaintiffs argue that sealing is proper in light of the parties' existing protective order, this argument is without merit. Here, the issuance of that protective order did not involve the court's

considered application of the "compelling reasons" standard. The presumption of access to court records is not rebutted simply because the court has approved the stipulated discovery phase protective order. *Kamakana*, 447 F.3d at 1183 (concluding that "[a]lthough the magistrate judge expressly approved and entered the protective order, the order contained no good cause findings as to specific documents that would justify reliance by the United States" and, therefore, "the claimed reliance on the order is not a compelling reason that rebuts the presumption of access" (citations and internal quotation marks omitted)); *see also Foltz*, 331 F.3d at 1136, 1138.

Other than relying on the stipulated protective order and state statutes, plaintiffs do not point to any other reasons or authority in support of their request to seal. ECF No. 127. Without more, plaintiffs have failed to meet the requirement that a party make a particularized showing that demonstrates compelling reasons to seal documents submitted in connection with a dispositive motion. *Cf. Pryor v. City of Clearlake*, No. C 11–0954 CW, 2012 WL 2711032, at *1–2 (N.D.Cal. July 6, 2012) ("generalized assertion of a privacy interest is not sufficient to warrant barring disclosure of a judicial record" but finding sealing proper where it concerned information that was sensitive, private and there was a likelihood "it was filed . . . because of private spite or a desire to scandalize the public").

Because plaintiffs have not borne the burden of establishing a compelling reason for the court to grant their request to seal the documents referenced in the oppositions to the defendants' separate motions for summary judgment, the court denies the request. Plaintiffs are directed to file the documents on the docket within seven (7) days, with redacted versions of WEL 1421, WEL 1426, and WEL 1428 omitting any personal information of third parties.

## III. UNDISPUTED FACTS

Water Well purchased Welenco from its owner and President, Gary W. Corbell, in May 2007[3] to form a "water well repair, swaging operations and geo-logging" business.[4] SUFs 1, 5; Corbell Decl. at 2, ECF No. 109–3. As a material condition of the purchase agreement, Ex. 2 at 71, ECF No. 24, a contemporaneous employment agreement provided that Gary Corbell's son Craig was to remain employed by Welenco, where he had worked for several years, until May 3, 2010, ECF No. 2–3 at 5. On October 31, 2011, Welenco President Robert Guardino sent Craig Corbell a letter reminding him of the employment agreement and stating that, unless Corbell elected to terminate the agreement by providing written notice, it renewed automatically and Corbell remained bound by its terms. ECF No. 125–3 at 8.

Throughout 2011 and 2012, the Corbells exchanged multiple emails developing a plan to form a geo-logging business, fi-

---

3. Eventually, a dispute arose regarding payments and in July 2014, Gary Corbell commenced a state court action to collect the balance due under the promissory note securing the sale. SUF 7. Plaintiffs filed a cross-complaint; trial commenced on December 8, 2014 and a judgment was entered in favor of Gary Corbell with the cross-complaint dismissed. SUF 8. Also, at some point, Water Well ceased all business activities indepen-

dent of Welenco, and the two are now essentially one entity. SUF 6.

4. Swaging is "to shape or bend by means of a swage." *See* OED Online at www.oed.com. A swage is "a tool for bending cold metal . . . to the required shape; also a die or stamp for shaping metal on an anvil, in a press, etc." *Id.*

nanced by Gary Corbell and operated by Craig Corbell. *See, e.g.,* ECF No. 126–3 at 13, 15, 27. On October 20, 2011, Gary Corbell wrote an email to Craig Corbell stating, in relevant part "(1) make sure there is [sic] not any emails, documents ANYWHERE within weleco [sic] or on ANY computer regarding this. (2) Wonder if you want to download copies [of] all the archived logging files to a portable storage device?" ECF No. 126–3 at 84.

Sixty-two technical drawings of vans, wells, and other well-related designs are subject to U.S. Copyright Registration Number VAU 1–132–287. SUF 17. According to the registration certificate, Welenco is the owner of the copyright by way of written assignment from two different authors, Scott Mauer and RB Cole, who both worked for Welenco. SUFs 18, 21. Neither signed a confidentiality agreement covering the drawings. SUFs 28, 29. Welenco contends that "[o]n November 7, 2011 ... Craig Corbell downloaded numerous Welenco proprietary files and documents, including reams of proprietary CAD drawings showing design details of Welenco's geo-logging vans (including designs and technical drawings which are the subject of Welenco's Certificate of Registration), other CAD drawings showing design details of proprietary well swages built by Welenco, Welenco's customer lists[ ] (including contact information and buying patterns), Welenco's revenue history from its geo-logging territories and other confidential/proprietary information." SUF 26; FAC ¶ 31. The customer list was not marked confidential, but employees, including Craig Corbell, signed a company memorandum acknowledging the confidentiality of customer information. ECF No. 125–3 at 6.

In October 2012, Craig Corbell left Welenco and started Boredata with a loan from Gary Corbell. SUF 1, ECF No. 102–2; ECF No. 125–3 at 37.

## IV. *LEGAL STANDARD*

 A court must grant a motion for summary judgment in whole or in part, "if ... there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed.R.Civ.P. 56(a). This is a "threshold inquiry" into whether a trial is necessary at all, that is, whether "any genuine factual issues ... properly can be resolved only by a finder of fact because they may reasonably be resolved in favor of either party." *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 250, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986).[5] The court does not resolve disputed questions of fact or credibility, *id.* at 255, 106 S.Ct. 2505; rather, it must draw all inferences and view all evidence in the light most favorable to the nonmoving party. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.,* 475 U.S. 574, 587–88, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986); *Whitman v. Mineta,* 541 F.3d 929, 931 (9th Cir.2008). "Where the record taken as a whole could not lead a rational trier of fact to find for the non-moving party, there is no 'genuine issue for trial.' " *Matsushita,* 475 U.S. at 587, 106 S.Ct. 1348 (quoting *First Nat'l Bank of Arizona v. Cities Serv. Co.,* 391 U.S. 253, 289, 88 S.Ct. 1575, 20 L.Ed.2d 569 (1968)).

 The moving party bears the initial burden of "informing the district court of the basis for its motion, and identifying those portions of the [record] which it believes demonstrate the absence of a genuine issue of material fact." *Celotex*

---

**5.** Rule 56 was amended, effective December 1, 2010; however, it is appropriate to rely on cases decided before the amendment took effect, as "[t]he standard for granting summary judgment remains unchanged." Fed.R.Civ.P. 56, notes of advisory comm. on 2010 amendments.

*Corp. v. Catrett,* 477 U.S. 317, 323, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986). The burden then shifts to the nonmoving party to "go beyond the pleadings" and "designate specific facts" in the record to show a trial is necessary to resolve genuine disputes of material fact. *Id.* The nonmoving party "must do more than simply show that there is some metaphysical doubt as to the material facts." *Matsushita,* 475 U.S. at 586, 106 S.Ct. 1348. "Only disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment." *Anderson,* 477 U.S. at 247–48, 106 S.Ct. 2505.

## V. *DISCUSSION*

### A. Craig Corbell/Boredata's Motion

#### 1. First Claim: Violation of Computer Fraud and Abuse Act, 18 U.S.C. § 1030 (CFAA)

 Plaintiffs' complaint alleges that Craig Corbell violated subsection (a)(4) of this federal statute when he (1) downloaded confidential company files to a personal Dropbox folder, FAC ¶¶ 31, 52; (2) denied plaintiffs access when he replaced the company password to that computer, and delayed in providing plaintiffs with the changed password, *id.* ¶¶ 32, 52; and (3) exceeded his authorized access to his company phone by placing it in his personal name and accessing its storage space to retrieve confidential client contact information, *id.* ¶¶ 39, 50, 51. Plaintiffs aver Corbell caused damage by requiring the use of company resources to investigate the damage and access issues, and causing lost revenue as a result of the unauthorized use. Guardino Decl. ¶¶ 8, 12.

The CFAA establishes a cause of action for use of a computer "without authorization" or when "exceed[ing] authorized access" "knowingly and with intent to defraud," and the defendant "obtains anything of value, unless the object of the fraud and the thing obtained consists only of the use of the computer and the value of such use is not more than $5,000 in any 1–year period." 18 U.S.C. § 1030(a)(4). The term "exceeds authorized access" is defined as "to access a computer with authorization and to use such access to obtain or alter information in the computer that the accesser is not entitled so to obtain or alter." *Id.* (6). While the statute is criminal in nature, civil liability may attach if the loss is greater than $5,000. 18 U.S.C. § 1030(c)(4)(A)(i)(I).

The Ninth Circuit has construed the statute in *United States v. Nosal,* a criminal case factually similar to this one. *Nosal* involved a plaintiff who left his executive search firm to start a competing business and convinced several employees who remained with his previous employer to access the employer's computers and "download source lists, names and contact information from a confidential database ... then transfer[ ] the information to [plaintiff]." 676 F.3d 854, 856 (9th Cir.2012). The employees accused of unlawfully accessing the information were authorized by the employer to access the database in question. *See id.* In interpreting section (a)(4) of the CFAA, the Ninth Circuit narrowly defined "exceeds authorized access" and "without authorization." *Id.* It rejected the argument that the statute covered a person authorized to access the information but who "is limited in the use to which he can put that information," *id.* at 857, saying "[t]he government's interpretation would transform the CFAA from an anti-hacking statute into an expansive misappropriation statute." *Id.; see also id.* at 859. Ultimately, the Circuit determined that "the plain language of the CFAA targets the unauthorized procurement or alteration of information, not its misuse or misappropriation." *Id.* at 863. While

*Nosal's* focus was on the extent of criminalization of conduct, its reading of the statute has been applied in the civil context. *See, e.g., Koninklijke Philips N.V. v. Elec–Tech Int'l Co.,* No. 14–CV–02737–BLF, 2015 WL 1289984, at *4 (N.D.Cal. Mar. 20, 2015); *Oracle Am., Inc. v. TERiX Computer Co., Inc.,* No. 5:13–CV–03385, 2014 WL 31344, at *7 (N.D.Cal. Jan. 3, 2014). At least one court has noted "[t]he definition of 'loss' itself makes clear Congress's intent to restrict civil actions under subsection (I) to the traditional computer 'hacker' scenario— where the hacker deletes information, infects computers, or crashes networks." *AtPac, Inc. v. Aptitude Solutions, Inc.,* 730 F.Supp.2d 1174, 1185 (E.D.Cal.2010).

Here, Craig Corbell's alleged behavior falls in the category of "misappropriation" as opposed to "hacking." There is no evidence that Corbell "hacked" any system or files. Plaintiffs' argument is only that Corbell "exceeded his access to his company computer," but there is no evidence he breached security protocols to obtain the information or accessed files to which he did not have rightful access. This behavior is not actionable under this statute. *See Dresser–Rand Co. v. Jones,* 957 F.Supp.2d 610, 620 (E.D.Pa.2013) (applying *Nosal,* and granting summary judgment where defendants "were authorized to access their work laptops and to download files from them" "even if they subsequently misused those documents to compete against [plaintiff]."); *Koninklijke Philips N.V. v. Elec–Tech Int'l Co.,* No. CV–02737, 2015 WL 1289984, at *3–4 (N.D.Cal. Mar. 20, 2015) (dismissing claim where plaintiff undisputedly authorized to access information he allegedly stole); *Quad Knopf, Inc. v. S. Valley Biology Consulting, LLC,* No. 1:13–CV–01262 AWI, 2014 WL 1333999, at *4 (E.D.Cal. Apr. 3, 2014) (same).

Plaintiffs' remaining claim that Corbell violated the CFAA by changing his computer's password is similarly unavailing because there are no facts before the court indicating defendant was not authorized to change his password, nor is there evidence that he changed his password at all, only that he withheld it for a couple of hours. ECF No. 125–3 at 12.

Summary judgment is GRANTED as to this claim.

## 2. Second Claim: Violation of California Penal Code Section 502 (CDAFA)

Like the CFAA, the CDAFA allows an individual who "suffers damage or loss by reason of a violation" of any provision of section 502(c) of the statute to bring a private civil action. Cal.Penal Code § 502(e)(1). The first provision of section 502(c) makes it a violation when a defendant "[k]nowingly accesses and without permission alters, damages, deletes, destroys, or otherwise uses any data, computer, computer system, or computer network in order to either (A) devise or execute any scheme or artifice to defraud, deceive, or extort, or (B) wrongfully control or obtain money, property, or data." Cal.Penal Code § 502(c)(1).

In *People v. Childs,* a California Court of Appeal considered a claim similar to the one plaintiffs make here: an employee defendant refused to reveal a username and password to his employer, disrupting employer's access to the computer. 220 Cal. App.4th 1079, 1098, 164 Cal.Rptr.3d 287 (2013). While a criminal case, *People v. Childs* has been relied on in the civil context. *See NovelPoster v. Javitch Canfield Grp.,* No. 13–CV–05186, 2014 WL 5594969, at *10 (N.D.Cal. Nov. 3, 2014). In Childs, defendant argued "that subdivision (c) (5) of section 502 was meant to apply only to unauthorized computer users—hackers— and not to an employee who was authorized to use the computer system but did so in a manner that vexed the employer." *Id.* Subdivision (c)(5) makes it an offense to

"Knowingly and without permission disrupts or causes the disruption of computer services or denies or causes the denial of computer services to an authorized user of a computer, computer system, or computer network." Cal.Penal Code § 502(c)(5). The state court rejected defendant's argument that the Legislature intended that unauthorized access is an implied element of subdivision (c)(5) and held that "disrupting or denying computer services to an authorized user could reasonably be read to fall within 'interference' with computers, even without a showing of unauthorized access." *Id.* at 1101–02, 164 Cal.Rptr.3d 287.

That said, in *Mahru*, a different state appellate court found an employee acting with his employer's authorization, who took steps to exclude a third party user of the employer's computer system, did not violate the statute. *Mahru v. Superior Court,* 191 Cal.App.3d 545, 549, 237 Cal. Rptr. 298 (1987). In dicta, the court asserted that the Legislature "could not have meant, by enacting section 502, to bring the Penal Code into the computer age by making annoying or spiteful acts criminal offenses whenever a computer is used to accomplish them. Individuals and organizations use computers for typing and other routine tasks in the course of their affairs, and sometimes in the course of these affairs they do vexing, annoying, and injurious things. Such acts cannot all be criminal." *Id.; see also Chrisman v. City of Los Angeles,* 155 Cal.App.4th 29, 36, 65 Cal.Rptr.3d 701 (2007) (citing this dicta with approval).

Here, Craig Corbell wrote in an email dated October 26, 2012, to Gary Corbell that "Dan just emailed me and asked for the password to the laptop I used in the office (forgot to disable it). I am sure Guardino told him to ask for [sic] and I am sure I got everything off of it, I think I will wait a bit before I give it to him."

ECF No. 125–3 at 12. The record does disclose an email sent on October 26, 2012, by Daniel Idhe, an employee of Welenco, to Craig Corbell seeking his laptop password. ECF No. 132–2 at 7. Craig Corbell responded to the email with the password approximately two and a half hours later, and Idhe thanked him two hours after that. *Id.* Plaintiffs have not refuted this evidence with any facts. In his deposition, Guardino confirmed Daniel Idhe was asked to contact Corbell for his password. Guardino Dep. at 85, ECF No. 110–4.

A two hour delay resembles at most merely "vexing," not "hacking," behavior. *See Childs,* 220 Cal.App.4th at 1105, 164 Cal.Rptr.3d 287 (agreeing with but distinguishing *Mahru* because "his case involves employee computer misconduct that is anything but routine"). Withholding a password for two hours is not comparable to "lock[ing] out every other potential user and [wiping] out system data if anyone other than him attempted to access his employer's computer system." *Id.* Plaintiffs have not established a triable issue as to whether Corbell interfered with the company's access to his laptop in a way that is actionable under the statute. Summary judgment is therefore GRANTED on this claim.

3. Third Claim: Copyright Infringement

 To establish copyright infringement, a plaintiff must show: "(1) ownership of a valid copyright, and (2) copying of constituent elements of the work that are original." *Feist Publ'ns, Inc. v. Rural Tel. Serv. Co.,* 499 U.S. 340, 361, 111 S.Ct. 1282, 113 L.Ed.2d 358 (1991).

 Defendant argues that Welenco does not own the alleged copyright-protected technical drawings at issue. The copyright registration certificate and the technical drawings covered by it are attached to the first amended complaint.

Ex. 1, ECF No. 24. According to the registration certificate, Welenco is the owner of the copyright by way of written assignment from two different authors, Scott Mauer and RB Cole. *Id.* The assignment is disputed by Mauer, who says he created the works as an independent contractor for Welenco, never signed any written agreement related to his work and was never an employee of Welenco. Mauer Decl. ¶ 4, ECF No. 110–10. Mauer says specifically he has not signed an agreement transferring ownership or agreed orally or in writing to transfer any rights to his drawings to Welenco. *Id.* ¶ 5. As a general rule, the author who actually creates the work, that is, the person who translates an idea into a fixed, tangible expression is entitled to copyright protection. *Cmty. for Creative Non–Violence v. Reid,* 490 U.S. 730, 737, 109 S.Ct. 2166, 104 L.Ed.2d 811 (1989) (citing 17 U.S.C. § 102). However, in works "made for hire," the employer owns the copyright. 17 U.S.C. § 201(b). Given the disputed nature of employment between Mauer and Welenco, and the lack of record evidence on the issue, the court draws inferences in favor of the nonmoving party at this stage, and cannot find as a matter of law that Welenco did not own the copyright of the technical drawings.

Even assuming Welenco ownership, plaintiffs cannot show they are entitled to actual or statutory damages. Statutory damages are not available because the alleged infringement occurred on November 7, 2011, before the effective date of the registration certificate, May 24, 2013. Opp'n at 6; Ex. 1, ECF No. 24. Plaintiffs concede as much in their opposition, but argue they are entitled to actual damages because they "can show emails, business registration certificates, and van pictures to evidence how Craig Corbell has been actively using the copyrighted material." Opp'n at 7. However, they have not produced any of this evidence, and even if

such evidence exists are precluded from doing so by the evidentiary sanctions being enforced against them.

Summary judgment is GRANTED on this claim.

### 4. Fourth and Fifth Claims: Lanham Act Violations

 Claims under the Lanham Act "may be based on a false statement of fact, or [ ] on an advertisement which uses a distinct name or mark to create a false association." *Two Jinn, Inc. v. Gov't Payment Serv., Inc.,* 233 Cal.App.4th 1321, 1345, 183 Cal.Rptr.3d 432 (2015). Here, plaintiffs claim both Lanham Act violations, alleging defendants "have used and will continue to use a false designation of origin that is likely to cause confusion, mistake, or deception as to affiliation, connection, or association of defendants with plaintiff." FAC ¶ 71 (citing 15 U.S.C. 1125(a)(1)(A)). Further, plaintiffs allege defendants "falsely stated and advertised the source/origin of their products and services in a manner intended to pass off their products/services as those of [p]laintiff, or to otherwise benefit from deception or mistake among consumers whereby consumers would identify [d]efendants' products/services as those manufactured, sold, licensed, or otherwise endorsed by [p]laintiff," and "have engaged in false advertising." FAC ¶¶ 75, 76 (citing 15 U.S.C. § 1125(a)(1)(B)).

Plaintiffs contend they can "show that Craig Corbell took unauthorized access of the company cell phone number, and advertised his private number" as plaintiffs' and "that Craig Corbell used company time and resources to solicit personal business from Welenco clients." Opp'n at 7, ECF No. 125. Here again, plaintiffs have not pointed to any evidence supporting these claims. While they cite to the declaration of Robert Guardino, it does not provide critical facts needed to survive

summary judgment. *See* Guardino Decl. ¶¶ 11, 12. There are no emails or phone records in any of the exhibits submitted with the opposition showing a misleading number, no advertisements in which Craig Corbell solicits business as Welenco or identifies his private number as Welenco's number, and there is no testimony from a client of either Welenco or Boredata implying Corbell erroneously advertised himself as another party. *See generally* Opp'n, ECF No. 125.

Without any factual support for the Lanham Act claims, plaintiffs have not met their burden to show any genuine dispute of fact. *See Cascade Yarns, Inc. v. Knitting Fever, Inc.*, 905 F.Supp.2d 1235, 1250 (W.D.Wash.2012) (granting summary judgment on Lanham Act claim where plaintiff has offered no evidence of a false statement). Accordingly, summary judgment is GRANTED as to claims four and five.

5. Sixth Claim: Trespass to Chattels

■ Defendants argue this claim is based on the statutory computer claims, claims one and two, which cannot survive summary judgment; they also say plaintiffs cannot show any damages as required to ultimately prevail. Boredata Mot. at 7. Here, plaintiffs allege Craig Corbell interfered with "the laptop drive and cell phone storage media." FAC ¶ 81. On summary judgment, plaintiffs contend that because they have documents showing "Welenco revenue history, Boredata earnings, and Boredata job lists," they can show damages. Opp'n at 7.

■ Under California law, trespass to chattels "lies where an intentional interference with the possession of personal property has proximately caused injury." *In re iPhone Application Litig.*, 844 F.Supp.2d 1040, 1069 (N.D.Cal.2012) (quoting *Intel Corp. v. Hamidi*, 30 Cal.4th 1342, 1350–51, 1 Cal.Rptr.3d 32, 71 P.3d 296 (2003)). A trespasser is liable when the trespass diminishes the condition, quality or value of personal property. *eBay, Inc. v. Bidder's Edge, Inc.*, 100 F.Supp.2d 1058, 1071 (N.D.Cal.2000). "An interference (not amounting to dispossession) is not actionable, under modern California and broader American law, without a showing of harm." *In re iPhone Application Litig.*, 844 F.Supp.2d at 1069. One who intentionally intermeddles with another's chattel is liable "only if his intermeddling is harmful to the possessor's materially valuable interest in the physical condition, quality, or value of the chattel, or if the possessor is deprived of the use of the chattel for a substantial time, or some other legally protected interest of the possessor is affected. . . ." *Jamgotchian v. Slender*, 170 Cal.App.4th 1384, 1401, 89 Cal.Rptr.3d 122 (2009).

While plaintiffs argue they have documents showing damages, they have not yet produced them, and are barred from doing so by the evidentiary sanctions. On the record before the court, there are no facts in the record showing defendant's use of the cell phone dispossessed plaintiffs of its use at any time, or that defendant interfered with the company's access to his laptop, as discussed above.

Summary judgment is GRANTED as to this claim.

6. Seventh Claim: Unfair Business Practices, Cal. Bus. & Prof.Code § 17200

■ Plaintiffs allege defendants engaged in unfair, unlawful, and deceptive business practices "including commercial impersonation of Welenco," "conversion of Plaintiffs' property and trespass upon Plaintiffs' computer systems," "for the purpose of harming Plaintiffs' business and causing competitive injury" "by diverting Plaintiffs' customers and revenues to Defendants and for their benefit." FAC ¶ 84. Defendants argue only, "for the reasons set forth above, there is no evidence to

support these facts." Boredata Mot. at 12. Because there is a genuine dispute as to whether defendant engaged in "unlawful" practices in departing Welenco and starting Boredata, as set forth in claims eight and nine below, the court finds triable issues precluding summary judgment on this claim.

### 7. Eighth Claim: Misappropriation of Trade Secrets

Plaintiffs allege Craig Corbell misappropriated trade secrets as defined by the California Uniform Trade Secrets Act, California Civil Code § 3426.1 *et seq.*, including "Welenco proprietary files and documents, including reams of proprietary CAD drawings showing design and specification details of Welenco's ˙geo-logging vans, and proprietary well swages built by Welenco, Welenco's customer lists, (including contact information and buying patterns), [and] Welenco's revenue history from its geo-logging territories." FAC ¶ 87. Plaintiffs contend they can show evidence that Corbell misappropriated trade secrets "by sharing confidential revenue history with others as he formed Boredata, and possessed the confidential information while securing logging parts and equipment." Opp'n at 8 (citing Guardino Decl. ¶¶ 13, 15). The court addresses each of these alleged misappropriations separately.

California has adopted a version of the Uniform Trade Secret Act ("UTSA"), Cal. Civ.Code § 3426.1 *et seq.,* which defines "misappropriation" of a trade secret as

(1) Acquisition of a trade secret of another by a person who knows or has reason to know that the trade secret was acquired by improper means; or

(2) Disclosure or use of a trade secret of another without express or implied consent by a person who:

(A) Used improper means to acquire knowledge of the trade secret; or

(B) At the time of disclosure or use, knew or had reason to know that his or her knowledge of the trade secret was:

(i) Derived from or through a person who had utilized improper means to acquire it;

(ii) Acquired under circumstances giving rise to a duty to maintain its secrecy or limit its use; or

(iii) Derived from or through a person who owed a duty to the person seeking relief to maintain its secrecy or limit its use; or

(C) Before a material change of his or her position, knew or had reason to know that it was a trade secret and that knowledge of it had been acquired by accident or mistake.

Cal. Civ.Code § 3426.1(b).

A trade secret is "information, including a formula, pattern, compilation, program, device, method, technique, or process, that: (1) Derives independent economic value, actual or potential, from not being generally known to the public or to other persons who can obtain economic value from its disclosure or use; and (2) Is the subject of efforts that are reasonable under the circumstances to maintain its secrecy." Cal. Civ.Code § 3426.1(d). A customer list may qualify as a trade secret because of its "economic value" when its "disclosure would allow a competitor to direct its sales efforts to those customers who have already shown a willingness to use a unique type of service or product as opposed to a list of people who only might be interested and [plaintiff] took reasonable steps to protect this information." *Hanger Prosthetics & Orthotics, Inc. v. Capstone Orthopedic, Inc.,* 556 F.Supp.2d 1122, 1135 (E.D.Cal.2008). Misappropriation can occur when an individual misuses a former employer's protected trade secret client list, for example, "by using the list to

solicit clients or to otherwise attain an unfair competitive advantage." *Reeves v. Hanlon*, 33 Cal.4th 1140, 1155, 17 Cal. Rptr.3d 289, 95 P.3d 513 (2004).

As to the customer list here, plaintiffs have identified facts showing it had economic value and they made reasonable efforts to maintain its secrecy. In January 1999, Gary Corbell sent a memorandum to all employees specifying that "all information pertaining to the company's customer list is confidential and disclosure during and after employment with the company is prohibited." ECF No. 125–3 at 6. This memorandum was acknowledged and signed by Craig Corbell on January. 8, 1999. *Id.*

Also, in his deposition, Guardino testified that having customers' contact information would give someone "a big competitive edge." Guardino Depo. at 135, ECF No. 110–4.

Q. What competitive edge does it give somebody?

A. They know who our customers are. They know who we work for. They could contact them. They don't have to do it through other means, such as advertising. There's a lot of important things.

Q. Do you believe that the names on that customer list are secret, unknown names, Mr. Guardino?

A. Some are.

Q. Can you identify those secret, unknown names that Craig Corbell has done work for?

A. Well, we don't know who Craig Corbell has done work for.

Q. But you do believe that some of the customers that are on Exhibit 8 are confidential; is that right?

A. It—not—what I'm stating—

Q. Go ahead.

A. What I'm stating is, these are important numbers to us and it gives him an advantage. If he is in possession of our customer list, it gives him a business advantage.

*Id.* at 136.

Q. Do you think the names of your customers on Exhibit 8 are unknown or not capable of being readily found out?

A. Many of them, yes.

*Id.* at 139.

In his sworn declaration, Guardino states that plaintiffs' revenue began to decrease upon the defendants' formation of Boredata, and that Craig Corbell was performing logging jobs in Southern California in competition with plaintiffs immediately after he left Welenco. Guardino Decl. ¶ 12. Guardino also testified in his deposition that "at least 90 percent of [Boredata's customers], if not 100 percent, were Welenco's customers. This is a very limited business. There's *[sic]* only a few people that do it." Guardino Depo. at 139. These facts would allow a factfinder to conclude that Corbell used the client list to identify clients. Summary judgment is DENIED to the extent the claim is premised on the customer list.

As to the revenue information, the citations in the declaration do not support any inference that the Corbells used or shared confidential revenue information. Summary judgment is GRANTED as it pertains to "revenue history."

As to the drawings, defendants argue they do not qualify as trade secrets because Guardino was unable to identify any secret information contained in the drawings, there is no evidence the drawings were confidential, and there is no evidence defendants used the drawings in creating Boredata. Boredata MSJ at 15. Craig Corbell specifically testified he "made no use of any Welenco or Water Well Technology drawings." ECF No. 110–9 ¶ 15.

Plaintiffs provide no evidence showing they made any effort to maintain the secrecy of the drawings. Scott Mauer, the author of several of the drawings at issue, states in a sworn declaration that it was never communicated to him that his drawings were confidential or considered trade secrets. Mauer Decl. at 2, ECF No. 110–10. Plaintiffs do not identify any particular drawings as trade secrets, or say which drawings were used by Craig Corbell in his company. To the extent the trade secrets claim is premised on the drawings, the court finds there is no triable issue regarding their qualification as trade secrets and summary judgment is GRANTED. *See MAI Sys. Corp. v. Peak Computer, Inc.*, 991 F.2d 511, 522 (9th Cir.1993) (reversing summary judgment where "no declaration or deposition testimony which specifically identifies any trade secrets"; because "trade secrets are not specifically identified, we cannot determine whether [defendant] has misappropriated any trade secrets").

### 8. Ninth Claim: Breach of Employment Agreement

■ Plaintiffs allege Craig Corbell's employment agreement required that Corbell maintain the confidentiality of Welenco's "Confidential Information," and refrain from soliciting Welenco's employees or disrupting employee relationships; plaintiffs say he breached that duty. FAC ¶ 96. Craig Corbell argues he did not breach any employment agreement because the agreement expired on May 4, 2007 "unless notice of election not to terminate was given before January 31, 2010," and he gave no such notice. SUF 75.

The Employment Agreement between Welenco and Corbell provides:

This Agreement shall commence on May 4, 2007, and expire on May 3, 2010. On or before January 31, 2010, either party must give the other party written notice of its election not to terminate this Agreement. Thereafter, if neither party has exercised its right to terminate this Agreement, the term hereof shall automatically renew for successive one (1) year periods, unless otherwise terminated at least thirty (30) days prior to the expiration of any term of this Agreement.

ECF No. 2–3 ¶ 5.1.

The Agreement also provides that all books and records shall be immediately returned to employer upon termination of the agreement, and that Corbell "shall not engage in any other business duties or pursuits whatsoever . . . without the written consent of Employer," or solicit employees to leave the company. *Id.* ¶¶ 2.4.1, 6.1.[6]

Plaintiffs have established a triable issue as to whether Craig Corbell violated the agreement by working to create a competing venture in the course of his employment and retaining business records after termination. In an email dated May 20, 2010, the Corbells discuss the employment agreement and proposing an amendment, "[s]o long as we don't lock me in with another no-compete like the employment agreement did." ECF No. 126–3 at 58. In another email dated June 9, 2010, Craig and Gary Corbell discussed extending the Agreement one to two years, referring to an email sent from Guardino to Craig Corbell about extending the employment agreement "as it was." ECF No. 125–3 at 32. Gary tells Craig by e-mail this would extend the non-compete, and advises him to "let it ride," and not give Guardino a yes or no so that only Welenco would be bound. *Id.* In response, Craig Corbell

---

**6.** The motion does not challenge the enforceability of the Agreement, and so the court does not reach that question.

states that while he did not sign, "if push comes to shove I think the court might side with [Guardino] in that 1. I did in fact stay on, and 2. Accepted the bonus which signals my understanding of the agreement." ECF No. 125–3 at 90.

On October 26, 2012, the record reflects Guardino sent Craig Corbell an email noting the employment agreement is still in effect. ECF No. 125–3 at 66. Corbell responded shortly thereafter saying he was attaching a notice he says he sent on August 19, 2011, notifying Guardino of his intent to terminate the agreement. The attachment is not included in the exhibits before the court.

Based on this record, a reasonable factfinder could find the existence of a valid employment agreement that both parties understood to be valid, and Craig Corbell's breach of that agreement.

Summary judgment is DENIED.

### B. Gary Corbell's Motion

As a preliminary matter, plaintiffs in their opposition concede summary judgment on the fourth, fifth, and sixth claims. Opp'n at 5. The court accordingly grants summary judgment on these claims, and turns to the remaining four claims (claims one, three, seven, eight) against Gary Corbell.

#### 1. First Claim: Violation of Computer Fraud and Abuse Act (CFAA)

Plaintiffs allege Gary Corbell conspired to obtain unauthorized access to a computer used in interstate commerce. FAC ¶ 52. Corbell argues that discovery has produced no facts supporting this allegation, justifying summary judgment. Corbell Mot. at 6, ECF No. 109–1.

Plaintiffs bring their claim against Gary Corbell under 18 U.S.C. § 1030(b), which imposes liability for any person who "conspires to commit or attempts to commit an offense under subsection (a)," the underlying statute on which plaintiffs base their claim against Craig Corbell. They argue that "Greg [sic] Corbell acted in concert and agreement with Craig Corbell to misappropriate Welenco trade secrets and start a competing well logging business," and they "conspired to thwart [p]laintiff's access to the company laptop." Opp'n at 4, ECF No. 126.

■■■ A claim under section (b) requires evidence of an agreement and common activities in furtherance of the unlawful act. *NetApp, Inc. v. Nimble Storage, Inc.*, 41 F.Supp.3d 816 (N.D.Cal.2014) (citing *Trademotion, LLC v. Marketcliq, Inc.*, 857 F.Supp.2d 1285, 1294 (M.D.Fla.2012) (recommending dismissal of § 1030(b) claim due to lack of facts showing "a knowing agreement with another to commit the unlawful act"); *Vacation Club Servs., Inc. v. Rodriguez*, No. 6:10–cv–247, 2010 WL 1645129, at *1–2, 2010 U.S. Dist. LEXIS 39572, at *5–6 (M.D.Fla. Apr. 22, 2010) (same)). Without a showing of any attempts to violate the statute, there is no triable issue of a conspiracy to do so.

As set forth above, a claim under subsection (a) requires more than just a showing that a defendant misused files to which he had access as an employee. Even if the Corbells discussed acquiring Welenco's information, the acquisition of that information did not violate the statute because there is no evidence Craig exceeded or attempted to exceed his authorized access. Therefore any "conspiracy" to acquire information that Craig Corbell had access to is not actionable. Likewise, plaintiffs' argument that Gary Corbell conspired to thwart access to the laptop is unavailing; Craig wrote to Gary, "I think I will wait a bit before I give it [the password] to him." ECF No. 125–3 at 12. There is nothing in the record showing a response from Gary, let alone an attempt to conspire, and the

record shows Craig emailed the password back to Welenco two hours later. *Id.*

This claim fails because a reasonable factfinder could not find Gary Corbell conspired with Craig Corbell to violate the statute. Summary judgment is GRANTED.

2. Third Claim: Copyright Infringement

 As discussed above, plaintiffs allege defendants have made unauthorized copies of plaintiffs' copyrighted design plans and technical CAD drawings and/or distributed such copies, without plaintiffs' authorization or consent, and have used such unauthorized reproductions in commerce to design and equip geo-logging vans to unfairly compete against plaintiffs. FAC ¶ 64. Gary Corbell argues that because his involvement in the alleged use of copyrighted materials is limited to a financial loan, he "could not have wrongfully used or distributed any copyrighted material." Corbell Mot. at 6.

 In their opposition, plaintiffs do not identify on what basis they claim Gary Corbell infringed, but argue he "sought to instruct Craig Corbell on downloading confidential logging files." Opp'n at 5. The court construes this as a claim of copyright infringement under a theory of vicarious infringement. "To state a claim for vicarious copyright infringement, a plaintiff must allege that the defendant has (1) the right and ability to supervise the infringing conduct and (2) a direct financial interest in the infringing activity." *Perfect 10, Inc. v. Visa Int'l Serv., Ass'n,* 494 F.3d 788, 802 (9th Cir.2007). Plaintiffs do not allege that Gary Corbell had any supervisory authority over Craig Corbell, so infringement may not be found on this theory. However, "one who, with knowledge of the infringing activity, induces, causes or materially contributes to the infringing conduct of another, may be held liable as a 'contributory' infringer.'" *A & M Records, Inc. v. Napster, Inc.,* 239 F.3d 1004,

1019 (9th Cir.2001), *as amended* (Apr. 3, 2001), *aff'd sub nom. A & M Records, Inc. v. Napster, Inc.,* 284 F.3d 1091 (9th Cir. 2002) (citation omitted); *see also Fonovisa, Inc. v. Cherry Auction, Inc.,* 76 F.3d 259, 264 (9th Cir.1996). "Put differently, liability exists if the defendant engages in 'personal conduct that encourages or assists the infringement.'" *Id.* (quoting *Matthew Bender & Co. v. West Publ'g Co.,* 158 F.3d 693, 706 (2d Cir.1998)). The Ninth Circuit interprets the knowledge requirement for contributory copyright infringement to include both those with actual knowledge and those who have reason to know of direct infringement. *See Ellison v. Robertson,* 357 F.3d 1072, 1076 (9th Cir.2004). To support a claim of secondary liability, plaintiffs must produce evidence of "culpable intent" and an "illegal objective." *See MGM v. Grokster,* 545 U.S. 913, 934–35, 939–41, 125 S.Ct. 2764, 162 L.Ed.2d 781 (2005); *see also Perfect 10, Inc. v. Amazon.com, Inc.,* 508 F.3d 1146, 1171 (9th Cir.2007).

Here, even if plaintiffs could establish copyright ownership and damages in the first instance, they have not pointed to any facts to show that defendant Gary Corbell acted with the "object of promoting" infringement of plaintiffs' copyright. Nor have plaintiffs shown a "clear expression," "other affirmative steps," or "specific acts" taken by defendant Gary Corbell that actively encouraged or induced infringement. *Luvdarts LLC v. AT & T Mobility, LLC,* No. CV 10–05442, 2011 WL 997199, at *2 (C.D.Cal. Mar. 17, 2011), *aff'd,* 710 F.3d 1068 (9th Cir.2013). Plaintiffs also have not pointed to facts showing defendant had any knowledge of the alleged copyright-protected drawings contained in the files.

Summary judgment is GRANTED as to this claim.

### 3. Seventh Claim: Unfair Business Practices

Plaintiffs allege defendants engaged in unfair competition as defined by California Business and Professions Code § 17200 *et seq.* (the Unfair Competition Law, or UCL), by engaging in unfair and unlawful and deceptive business practices, "including commercial impersonation of Welenco as alleged above, conversion of [p]laintiffs' property and trespass upon [p]laintiffs' computer systems in violation of Penal Code section 502, for the purpose of harming [p]laintiffs' business and causing competitive injury to [p]laintiffs by diverting [p]laintiffs' customers and revenues to Defendants and for their benefit." FAC ¶ 84.

Corbell argues there are no facts establishing he has engaged in any unfair business practices in violation of the UCL. Corbell Mot. at 7; SUF 17. Plaintiffs point to the Guardino declaration as evidence Corbell was an "active participant, advisor, and financer of the unlawful actions of Craig Corbell." Opp'n at 5.

To state a claim for an "unlawful" business practice under the UCL, a plaintiff must assert the violation of some other law. *Cel–Tech Commc'ns, Inc. v. Los Angeles Cellular Telephone Co.*, 20 Cal.4th 163, 180, 83 Cal.Rptr.2d 548, 973 P.2d 527 (1999) ("By proscribing 'any unlawful' business practice, section 17200 'borrows' violations of other law and treats them as unlawful practices that the unfair competition law makes independently actionable.") (citation omitted). Where a plaintiff cannot state a claim under the "borrowed" law, he cannot state a UCL claim. *See, e.g., Smith v. State Farm Mutual Automobile Ins. Co.*, 93 Cal.App.4th 700, 718, 113 Cal.Rptr.2d 399 (2001).

No violation of any borrowed law justifies the application of this statute to Gary Corbell, as reflected in the discussion of the other claims covered by the instant motion. Summary judgment is GRANTED as to this claim.

### 4. Eighth Claim: Misappropriation of Trade Secrets

The trade secret misappropriation allegations against Gary Corbell are identical to those against Craig Corbell discussed above. Plaintiffs argue "each defendant disclosed or used a trade secret of Welenco knowing that improper means were used to acquire knowledge of the trade secret, or, at the time of disclosure or use, they knew or had reason to know their knowledge of the trade secret was: (i) derived from or through a person who had utilized improper means to acquire it; (ii) acquired under circumstances giving rise to a duty to maintain its secrecy or limit its use; or (iii) derived from or through a person who owed a duty to Welenco to maintain its secrecy or limit its use."

Gary Corbell argues plaintiffs have not shown any facts demonstrating he misappropriated, used, or distributed the alleged trade secret documents, namely the customer list and CAD drawings. Plaintiffs point to Guardino's declaration, saying they have produced evidence that defendant acted in concert with Craig Corbell to take Welenco files. *See* Guardino Decl. ¶¶ 5–8.

There is no evidence showing Gary Corbell acquired, disclosed, used, or derived the alleged trade secrets here. Guardino's declaration is insufficient to defeat summary judgment, given that Guardino has no personal knowledge of Gary and Craig Corbell's discussion regarding Welenco files; Guardino's own statements do not create a triable issue.

Summary judgment is GRANTED as to this claim.

## VI. CONCLUSION

The motion for summary judgment by Craig Corbell/Boredata (ECF No. 110) is GRANTED as to claims one, two, three, four, and five, in part as to claim eight, and DENIED in all other respects. The motion for summary judgment by Gary Corbell (ECF No. 109) is GRANTED in its entirety. The request to seal is DENIED; plaintiffs are directed to file the documents (with redacted versions of WEL 1421, WEL 1426, and WEL 1428) from Jarom Phipps' declaration, ECF Nos. 125–3 & 126–3, omitting any personal information of third parties.

IT IS SO ORDERED.